PAXSON et al. v. CUNNINGHAM.

(Circuit Court of Appeals, First Circuit. June 26, 1894.)

No. 91.

RECEIVERS—LIBEL AGAINST VESSEL IN RECEIVERS' POSSESSION—INJUNCTION.
    After receivers of a railroad company, appointed by a United States circuit court, had taken possession of a steamship, the property of the company, she came into collision with another vessel, and was libeled therefor by the owners of that vessel in the district court. *Held*, that the circuit court, in its discretion, properly declined to issue, on the petition of the receivers, an injunction against the proceedings in admiralty.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a petition by Edward M. Paxson and others, receivers of the Philadelphia & Reading Railroad Company, for an injunction against Milford T. Cunningham, to restrain the prosecution of a libel in admiralty. The circuit court sustained a demurrer to the petition, and a decree dismissing the petition was entered thereon. The petitioners appealed.

Robert M. Morse and William M. Richardson, for appellants.

C. T. & T. H. Russell, Charles T. Russell, and Charles T. Russell, Jr., for appellee.

Before GRAY, Circuit Justice, COLT, Circuit Judge, and CARPENTER, District Judge.

GRAY, Circuit Justice. This was a petition by the receivers of the property of the Philadelphia & Reading Railroad Company for an injunction to restrain the prosecution of a libel in admiralty against a steamship in their possession. The allegations of the petition were, in substance, as follows:

On February 20, 1893, the petitioners were appointed, by decree in equity of the circuit court of the United States for the eastern district of Pennsylvania, receivers of the Philadelphia & Reading Railroad Company, a corporation of Pennsylvania, and of all its railroads, canals, collieries, boats, and vessels, and other property, real and personal, and were authorized to exercise the franchises of the company, and to run and operate its railroads and canals, and to use and employ its mines in the manner that they had been theretofore used and employed; and on February 21, 1893, a like decree was made by the circuit court of the United States for the district of Massachusetts, appointing them receivers of the property of the railroad company within its jurisdiction. The receivers forthwith exercised the authority conferred by those decrees, and took possession of all the property of the company, including the steamship Williamsport, a steam collier used to carry coal taken from its mines from Philadelphia to Boston; and the use and employment of the steamship was continued by the receivers, and was necessary for the proper management and conduct of the business of the company.

On October 13, 1893, while the Williamsport was in Boston harbor, in the possession and employment of the receivers, she came into collision with the steam tug Bessie B, belonging to Milford T. Cunningham and others. On October 14th, Cunningham, as managing part owner of the tug, filed in the district court of the United States for the district of Massachusetts a libel in admiralty against the Williamsport, to enforce a maritime lien for damages caused by the collision; and the United States marshal, pursuant to a warrant issued by that court, seized the Williamsport, and took her into his custody and possession, and out of the custody and possession of the receivers. On November 8, 1893, the receivers moved the district court to dismiss the libel, and to deliver the steamship to the receivers, on the ground that the seizure by the marshal was illegal, and that that court acquired thereby no jurisdiction over the steamship. But the motion was denied. Thereupon, on the same day, the receivers filed in the circuit court of the United States for the district of Massachusetts this petition, praying for an injunction to restrain Cunningham from proceeding further with his libel, and to command him to release the steamship from the custody of the marshal, and deliver her into the possession of the re-

ceivers, and for further relief. Cunningham demurred to this petition upon the grounds that it did not state such a case as entitled the petitioners to an injunction or other relief, or as authorized the court to grant either, and that the suit which the petitioners prayed to have the respondent enjoined from further prosecuting "is a libel in admiralty, brought by him as managing part owner of the steam tug Bessie B, in due form, and within the jurisdiction provided by the constitution and laws of the United States, against the said steamship Williamsport, as an offending res, to answer for her default and misdoing within the said admiralty jurisdiction, and the said respondent had the right to institute and has the right to maintain said suit, under the maritime law and under the constitution and laws of the United States, against the said steamship Williamsport."

The circuit court sustained the demurrer and dismissed the petition, and the petitioners appealed to this court.

The case, as stated in the petition and admitted by the demurrer, is briefly this: After the steamship Williamsport, and all other property of the Philadelphia & Reading Railroad Company, had been taken possession of by the receivers of that company appointed by the circuit court of the United States, sitting in equity, she came into collision with another vessel, and was libeled by the owners of that vessel in the district court of the United States, sitting in admiralty, to enforce a maritime lien for damages caused by the collision.

The case involves no question of conflicting jurisdiction between the courts of the nation and those of the state, or of conflicting right between different claims existing against the railroad company or its property at the time of the appointment of the receivers. But the question is simply whether the claim of a maritime lien for an injury done by the Williamsport while in the possession and use of the receivers should be tried, in the first instance, in admiralty or in equity.

A maritime lien upon the offending ship for an injury by a collision is a jus in re in the ship herself, and carries with it the right to libel her in an admiralty court of the United States, unless the owners institute proceedings in such a court to limit their liability; and an admiralty court has peculiar rules of its own in some respects,—such as the priority of this and other liens, and the effect of contributory negligence of the libelant upon the recovery of damages,—which cannot conveniently, if at all, be applied by a court of equity or of common law. Transportation Co. v. Wright, 13 Wall 104; The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019; The America, 16 Law Rep. 264, Fed. Cas. No. 288; Henry, Adm. cc. 3, 4.

Moreover, by Act Aug. 13, 1888, c. 866, § 3, "every receiver or manager of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager

was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." 25 Stat. 436.

If the libel now in question had been in personam against the receivers, it would have been within the very terms of the statute, and might have been filed without leave of the circuit court which appointed the receivers. subject, however, to the control of that court, so far as necessary to the ends of justice. McNulta v. Lochridge, 141 U. S. 327, 12 Sup. Ct. 11; Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905. The libel in rem against the steamboat for a wrong done by her while in the possession and employment of the receivers, if not within the terms of the statute, is within its reason and equity. Independently of the statute, there could be no objection to proceeding with that libel. so far as might be done without interfering with the possession of the receivers. Heidritter v. Oilloth Co., 112 U. S. 294, 304, 5 Sup. Ct. 135. And, whether the libel in rem against the steamboat in the hands of the receivers is or is not considered as coming within the statute, it was clearly within the discretion of the circuit court to permit the libelants to establish and enforce their maritime lien in the district court in admiralty, as the appropriate tribunal to try and determine that matter. The receivers can regain possession of the steamship, if they have not already done so, by entering into a stipulation in the district court to abide its final decree, and that decree will be subject to review by this court on appeal.

Upon the facts of this case, therefore, the circuit court wisely exercised its discretion by declining to issue an injunction against the proceedings in admiralty.

This conclusion is in harmony with the decisions of the supreme court of the United States in the recent litigation in New York concerning the vessels of the Schuyler Steam Towboat Company. After one Sturges had been appointed by a court of the state of New York receiver of all the steamboats and other property of that company, Moran and others, owners of certain tugs. filed against some of the steamboats, in the district court of the United States for the southern district of New York, libels in admiralty, upon which the United States marshal took possession of them. The receiver, having obtained leave of the state court to contest those libels. made a motion to the district court to order the marshal to give up his custody; and that court denied the motion. on the ground that the question should be raised by answer to the libels, and gave the receiver leave to answer accordingly. The receiver appeared and answered to one libel, contesting the jurisdiction of the district court, and then applied to the supreme court of the United States for a writ of prohibition to the district court, which was denied. on the ground that the question was within the jurisdiction of the district court, to try and determine in the proceedings pending before it. In re Sturges. stated in Re Fassett, 142 U. S. 479, 484, 12 Sup. Ct. 295. The state court afterwards, on the petition of the receiver, ordered an injunction to issue to restrain the libelants from taking further

proceedings upon the libels. In re Schuyler Steam Towboat Co. (Sup.) 18 N. Y. Supp. 89, 19 N. Y. Supp. 565. And its judgment was affirmed by the court of appeals of the state. 136 N. Y. 169, 32 N. E. 623. But the supreme court of the United States reversed that judgment, as being an unlawful interference with the proceedings in the district court of the United States, not merely because the receivers had neither actual nor constructive possession of the steamboats when they were taken into the custody of the marshal by order of the court of the United States, but also upon the broader grounds that the state court had in effect granted the prohibition which the supreme court of the United States had denied; that a court of a state cannot, by injunction, restrain suitors from proceeding in the courts of the United States; and that, by the constitution and laws of the United States, jurisdiction to enforce a maritime lien by suit in rem is exclusively vested in the courts of the United States. Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019.

Our conclusion is also in accord with the practice of the English courts exercising chancery jurisdiction. The high court of chancery habitually granted leave to a creditor claiming a paramount right, by mortgage or otherwise, in property in the hands of a receiver, unless the claim was clearly unfounded, to enforce the right by action at law against the receiver, even when it was necessary, in order to maintain such an action, to seize the property under process from the court of law. Bryan v. Cormick, 1 Cox, Ch. 422; Brooks v. Greathed, 1 Jac. & W. 176; Aston v. Heron, 2 Mylne & K. 390, 396, 397; Randfield v. Randfield, 3 De Gex, F. & J. 766.

The English cases cited as supporting the opposite view were controlled by positive provisions of statutes. In Halliday v. Harris, L. R. 9 C. P. 668, where a county court, having jurisdiction in bankruptcy, and authorized by section 72 of the bankruptcy act of 1869 (St. 32 & 33 Vict. c. 71) to decide all questions of law or fact which it might "deem it expedient or necessary to decide for the purpose of doing complete justice, or making a complete distribution of property," made an order restraining a creditor from enforcing in a colonial court of vice admiralty a claim of lien on a ship, part of the bankrupt's estate, for necessaries supplied abroad, and directing an issue to try the matter in the court of bankruptcy, a writ of prohibition to the county court was refused because the order was within its jurisdiction, and if the jurisdiction had been improperly exercised the only remedy was by appeal; and Lord Justice Brett expressed "a strong opinion that, if this case had been taken on appeal before the lords justices, they would have held that this was not a matter that the county court ought to entertain. It has no efficient machinery, if it decides that these necessaries were supplied, for enforcing its judgment in favor of the defendant; and, as its judgment cannot be effective in his favor, it ought not to decide against him." L. R. 9 C. P. 680. In the case of The Australian D. S. Nav. Co., L. R. 20 Eq. 325, the liquidator, under an order for winding up the company under the companies' act of 1862 (St. 25 & 26 Vict. c. 89), obtained an injunction against a pro-

ceeding in the court of admiralty for the arrest of the ship, solely upon the ground that such an arrest was a sequestration, within the meaning of section 163 of the act, by which, "where any company is being wound up by the court, or subject to the supervision of the court, any attachment, sequestration, distress or execution, put in force against the estate or effects of the company after the commencement of the winding up, shall be void to all intents."

It is also to be remembered that maritime liens, and the admiralty jurisdiction over them, are allowed less effect by the law and statutes of England than by the constitution and laws of the United States. The J. E. Rumbell, 148 U. S. 1, 20, 13 Sup. Ct. 498.

Decree affirmed.