CARTER v. HOBBS et al.

(District Court, D. Indiana. March 10, 1899.)

No. 5,945.

1. BANKRUPTCY—TRUSTEE'S PETITION TO AVOID PREFERENCES—MULTIFARIOUSNESS.

A petition, by a trustee in bankruptcy, against the bankrupt and one of his creditors, to procure the setting aside of a mortgage on land, a chattel mortgage, and a lease of real and personal property, all made by the bankrupt at different times to the defendant creditor, and alleged to be fraudulent as to other creditors, and to have been given and ac-

cented with the intent to prefer the creditor receiving the same, is not demurrable for multifariousness.

2. SAME—EFFECT OF ADJUDICATION.

An adjudication in bankruptcy operates in rem, and places the bankrupt's entire estate, including property previously transferred in fraud of creditors, in the custody of the law, and under the jurisdiction of the court of bankruptcy, in which court alone all persons claiming rights in the estate, or seeking to participate in it, must assert their claims.

3. SAME—JURISDICTION OF BANKRUPTCY COURT.

A mortgage creditor of the bankrupt, though he does not prove his claim, is a party to the proceedings in bankruptcy, and subject to the jurisdiction of the court of bankruptcy; and the trustee, seeking to set aside the mortgage as a fraudulent preference, may proceed by petition or bill in the court of bankruptcy, and will not be compelled to resort to the state court, or federal circuit court, which otherwise would have jurisdiction of such an action against an adverse claimant.

4. SAME.

Notwithstanding the provision of section 23b of the bankruptcy act (30 Stat. 552), that "suits by the trustee shall only be brought or prosecuted in the courts in which the bankrupt might have brought or prosecuted them if proceedings in bankruptcy had not been instituted," the court of bankruptcy has jurisdiction of a petition by the trustee against the bankrupt and a creditor to set aside alleged fraudulent preferences, for such a suit is not one which the bankrupt himself could have instituted or maintained.

5. SAME—CONSTRUCTION OF STATUTE.

On questions of the construction of the bankruptcy act, opinions expressed by individual members of congress in the debates on the passage of the act, as to the object and effect of its particular clauses, are entitled to little or no weight.

In Bankruptcy. On demurrer to petition by plaintiff, as trustee in bankruptcy, against the bankrupt and another, to set aside certain conveyances alleged to have been fraudulent and preferential. Demurrer overruled.

Gifford & Coleman, for plaintiff.
Gavin & Davis, for defendants

BAKER, District Judge. On November 19, 1898, Beecher Goodykoontz filed his voluntary petition in bankruptcy, and on the same day he was duly adjudged a bankrupt. On December 6, 1898, Walter Carter was duly appointed a trustee of the bankrupt's estate, and on December 10, 1898, he filed his bond, and duly qualified, and assumed the duties of his trust. On March 2, 1899, he filed in this court his amended petition or bill against the bankrupt and Zachariah T. Hobbs, in which he alleges, in substance, that the bankrupt, in his schedule filed herein, transferred as a part of his assets two certain parcels of real estate specifically described, situated in Hamilton county, Ind., and also certain specifically described horses, harnesses, and hogs; that on August 22, 1898, the bankrupt executed to Hobbs a mortgage on this real estate to secure a note of even date, due in 30 days, for $2,150, and that this was done within 4 months prior to the filing of his voluntary petition to be adjudged a bankrupt; that the indebtedness evidenced by the note and attempted to be secured by the mortgage was in existence more than 4 months before the petition in bankruptcy was filed, and the mortgage was executed

by the bankrupt and accepted by Hobbs with the fraudulent intent to give him a preference over the other creditors of the bankrupt, and with the intent to hinder, delay, and defraud them; that the bankrupt and Hobbs, at the time said mortgage was executed, knew that the bankrupt was insolvent, and that his property, at a fair valuation, was not sufficient to pay his bona fide indebtedness in full, and that the purpose of both parties in executing and accepting the mortgage was to give Hobbs a preference over the other creditors of the bankrupt. The petition also seeks to set aside as fraudulent a chattel mortgage on the personal property of the bankrupt, executed November 14, 1898. The allegations of the petition assailing the chattel mortgage are the same, in substance, as those relating to the real-estate mortgage hereinbefore set out, and therefore need not be further mentioned. The petition also assails as fraudulent a certain lease of real and personal property, executed August 17, 1898, by the bankrupt to Hobbs, and seeks to compel him to account for the fair rental value of the property. The grounds upon which the lease is assailed are the same as those set out above.

No question is made but that the petition states facts sufficient, if established by the evidence, to justify and require the court to grant the relief prayed for. The bankrupt has neither answered nor demurred. Hobbs has filed a demurrer, in which it is alleged (1) that the petition is multifarious, (2) that the court is without jurisdiction.

The grantor and grantee are proper parties to a suit brought by creditors to set aside a fraudulent conveyance. The objection that the petition is multifarious is untenable. Although the defendants are charged with different acts of fraud affecting different parts of the estate of the bankrupt, still their acts are charged to have been done with a common fraudulent purpose; and the object of the petition is simply to clear the estate of the bankrupt, which has passed into the possession of the trustee, from apparent incumbrances and leasehold interests placed upon it by the mortgages and leases sought to be avoided. That the petition is not multifarious is shown by the cases of Boyd v. Hoyt, 5 Paige, 65; Fellows v. Fellows, 4 Cow. 682; and Platt v. Preston, Fed. Cas. No. 11,219. The trustee stands in the place of the creditors of the bankrupt, and has the same rights, and may pursue the same remedies in their behalf, as they had or would have been entitled to if there had been no adjudication of bankruptcy. He may, therefore, embrace in his petition all such matters and causes of action as might have been included by the creditors in a creditors' bill against these defendants. The fraud charged against the defendants is that by a fraudulent combination between them certain real and personal property of the bankrupt has been leased and mortgaged to Hobbs with the intent to prefer him in fraud of the rights of the general creditors. The object of the petition is single, and seeks to accomplish but a single purpose, namely, to clear the bankrupt's estate from the fraudulent claims placed upon it by the defendants. The frauds alleged are the same. The one matter charged is fraud in the incumbrance and disposition of the property of the bankrupt. Each defendant has a common interest centering in every

point in issue. In the case of Fellows v. Fellows, ubi supra, it was held that the joinder in a creditors' bill of three persons, to whom separate deeds of conveyance for separate parcels of real estate had been executed at the same time by a debtor, with the intent to defraud his creditors, did not make such bill multifarious.

It is next insisted that this court is without jurisdiction, and that the bankrupt's estate, which has passed into the custody of the court, and is now in the possession of its trustee, can only be cleared of the fraudulent incumbrances placed thereon by a suit brought in a court of the state. The trustee is vested by operation of law with the title of the bankrupt as of the date of the adjudication, among other things, to all property transferred by him in fraud of his creditors, as well as to all property which, prior to the filing of the petition, he could, by any means, have transferred, or which might have been levied upon and sold by judicial process against him. Bankruptcy Act, § 70. The word "transfer" includes the sale and every other different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as by payment, pledge, mortgage, gift, or security. Id. § 1, cl. 25. Therefore the title to the bankrupt's property, incumbered by the mortgages and lease, was transferred by operation of law to, and vested in, the trustee, an officer of this court. The decree operates in rem, and from the moment of the adjudication of bankruptcy the bankrupt's estate is in custodia legis, and under the jurisdiction of this court. It is fundamental that no court or individual can interfere with such custody and possession. The assertion of any right against, or to participate in, the res so in custodia legis, must be sought in the court in whose custody it is. An attempt to assert such right elsewhere would be regarded as a contempt. The adjudication proceeds in rem, and all persons interested in the res are regarded as parties to the bankruptcy proceedings. These parties include, not only the bankrupt and trustee, but also all the creditors of the bankrupt. The present act, in addition to having provisions analogous to those found in the act of 1841, also discloses (section 57e) that claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities and priorities. The last clause clearly implies an authority in the bankruptcy court to ascertain and determine whether or not the security or priority exists; as well as to determine the value of it, and the amount of the debt so secured. Section 56b contains a similar provision. Section 63 makes debts, whether due and payable or not, provable in bankruptcy. Section 57h provides that the value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which the securities are held by the creditors, or by such creditors and the trustee by agreement, arbitration, compromise, or litigation as the court may direct; and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.

The last section clearly shows that the secured creditor is under the jurisdiction of the bankruptcy court, and that it may restrain him from enforcing his claim in any other court, or it may authorize such secured creditor to litigate a claim secured by lien in a state court. The jurisdiction of the bankruptcy court over such claims and claimants, in my opinion, is clearly conferred by the present act. We do not understand respondents' counsel to contest such jurisdiction, if the secured creditor seeks to prove against the general assets. Their contention is that such secured creditor may, if he elects to look to his security alone for the satisfaction of his debt, decline to prove his debt; and by so doing he is not drawn within the jurisdiction of the bankruptcy court; and that, so electing, he is to be regarded as an adverse claimant, and cannot be proceeded against in the bankruptcy court, but must be proceeded against in a court of the state, unless, by reason of diversity of citizenship and the amount in controversy, he may be sued in the circuit court of the United States. But, in my judgment, such secured creditor is not an adverse claimant. Under Act 1841, § 6, it was contended that a secured creditor who had not come into the bankruptcy proceedings and proved his claim was to be regarded as an adverse claimant, over whom the bankruptcy court possessed no jurisdiction. This contention did not prevail. The supreme court, in Ex parte Christy, 3 How. 292, 315, said:

"Another ground of objection insisted on in argument is that the language of the sixth section, when it refers to any creditor or creditors who shall claim any debt or demand under the bankruptcy, is exclusively limited to such creditors as come in and prove their debts under the bankrupt law, and does not apply to creditors who claim adversely thereto. * * * But we do not so interpret the language. When creditors are spoken of who claim a debt or demand under the bankruptcy, we understand the meaning to be that they are creditors of the bankrupt, and that their debts constitute present subsisting claims upon the bankrupt's estate, unextinguished in fact or in law, and capable of being asserted under the bankruptcy in any manner or form which the creditors might elect, whether they have a security by way of pledge or mortgage therefor or not. If they have a pledge or mortgage therefor, they may apply to the court to have the same sold, and the proceeds thereof applied towards the payment of their debts pro tanto, and to prove for the residue; or, on the other hand, the assignee may contest their claims in the court, or seek to ascertain the true amount thereof, and have the residue of the property, after satisfying their claims, applied for the benefit of the other creditors. Still the debts or demands are, in either view, debts or demands under the bankruptcy, and they are required by the bankrupt act to be included by the bankrupt in the list of his debts due to his creditors when he applies for the benefit of the act; so that there is nothing in the language or intent of the sixth section to justify the conclusion which the argument seeks to arrive at."

From the foregoing considerations it would seem to be clear that the district court, when sitting in bankruptcy, has lawful jurisdiction over liens and mortgages upon the property of the bankrupt, so that it may inquire into their validity and extent, and grant the same relief which the courts of the state might or ought to grant, and that such court may do this without the consent of the secured creditor.

Nor do I think a fair construction of section 23b of the present act can be regarded as ousting the court sitting in bankruptcy of such jurisdiction. The grant of jurisdiction by the second section of the act, omitting the exception in clause 7, is ample, and perhaps would

be exclusive in collecting in and reducing to money and distributing the estate of the bankrupt, of whatever nature. Section 2, cls. 6, 7, 15, including the last paragraph of the section. Section 23b reads:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

This section, doubtless, is intended to be the exception ingrafted on section 2, cl. 7, which reads:

"(7) Cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Omitting the exception, it is clear that by section 2 the district court sitting in bankruptcy would be invested with original and exclusive jurisdiction unless it gave leave to parties to sue in the courts of the state over the collection of all debts and demands due the bankrupt, as well as the entire administration of the bankrupt's estate, and the determination of all controversies relating thereto. It is, however, earnestly contended that clause b of section 23, with which we are alone concerned, takes from the bankruptcy court, and remits to the courts of the state, jurisdiction over all suits for the collection of debts and demands due the bankrupt, as well as of all suits to set aside fraudulent transfers of every sort, and to recover the property of bankrupts in the wrongful possession of third parties; in short, that the bankruptcy court has no jurisdiction to "cause the estates of bankrupts to be collected" and reduced to its possession. If the bankruptcy court possesses no jurisdiction over these matters, it is shorn of power to accomplish the purpose of its creation, and it is impotent, indeed, if it must rely upon the courts of the state to perform the largest and most important part of the work of administering the bankruptcy act. Such, in effect, is the ruling in Burnett v. Mercantile Co., 91 Fed. 365, where it is held that the district court has no jurisdiction to entertain a suit to set aside conveyances made by the bankrupt in fraud of his creditors. But this broad construction of clause b is inadmissible. It, of course, is to be construed in connection with every part of section 2, which contains the plenary grant of jurisdiction to the district court sitting in bankruptcy. It takes out of the plenary grant of jurisdiction that which otherwise would be within it. But such a construction of an exception as makes it plainly repugnant to the body of the act is not permissible. Dollar Sav. Bank v. U. S., 19 Wall. 227. The general rule of law is that an exception only carves some special matter out of the body of the act, and those who set up such exception must establish it as being within the words as well as the reason thereof. Ryan v. Carter, 93 U. S. 78; U. S. v. Dickson, 15 Pet. 141. The language of clause b must be strictly construed to avoid repugnancy between it and the plenary grant of jurisdiction conferred by section 2. The application of these settled rules of construction leaves no doubt that the clause of section 23 under consideration does not devest courts of bankruptcy of jurisdiction over suits brought by the trustee to set aside fraudulent transfers of the bankrupt. The clause in question requires suits which the bank-

rupt might have brought or prosecuted to be brought in the courts in which the bankrupt must have brought them if bankruptcy had not supervened. It seems to me to be clear that, where the trustee brings a suit to enforce a right of action which never existed in the bankrupt, the district court has ample jurisdiction to maintain it. The trustee's right of action in such a case is not a derivative one, growing out of a prior right possessed by the bankrupt, but his right is original, created by law, and in the enforcement of it he represents the creditors, and his suit is, in effect, the exact equivalent of a creditors' bill to reach property fraudulently transferred. Such a suit could never have been brought or prosecuted by the bankrupt against himself and his fraudulent transferees. No state court could entertain jurisdiction over such a suit when attempted to be brought or prosecuted by the bankrupt, and no such construction of clause b is admissible. When suits which the bankrupt could have brought or prosecuted in the courts of the state are spoken of, evidently real suits upon existing causes of action belonging to the bankrupt are meant, and not suits for the pretended enforcement of causes of action which never existed in favor of the bankrupt. Whether district courts have jurisdiction over suits to recover debts and demands due or owing to the bankrupt at the time of the adjudication of bankruptcy it is not necessary to consider or determine. On this question, however, see In re Sievers, 91 Fed. 366.

It is insisted that the conclusion here reached is in conflict with the opinions expressed by Senator Lindsay and Representative Henderson, who respectively had the bill in charge in the senate and the house. Counsel have set out in their brief copious extracts from the speeches of these gentlemen, which it is claimed show that the congress intended all adversary suits to be brought in the courts of the state. A careful reading of what was said does not, in my opinion, justify any such conclusion. Their views seem to have been that debts and demands due or owing to the bankrupt on which he could have brought suit must be prosecuted and collected by the trustee in the courts of the state. But we need not further consider the opinions of these gentlemen, for the reason that the opinions of individual legislators as to the object and effect of a statute are of little or no weight on the question of its construction. 23 Am. & Eng. Enc. Law, p. 337, note 5, and cases there cited.

It follows that the demurrer must be overruled, to which the defendant excepts. The defendant is ruled to answer within 10 days. So ordered.