### SHUTTS v. FIRST NAT. BANK OF AURORA.

(District Court, D. Indiana. December 29, 1899.)

(No. 6,050.)

1. BANKRUPTCY—PREFERENCES—PAYMENT OF MORTGAGE DEBT.

 Where an insolvent debtor, within four months prior to the filing of a petition in bankruptcy against him, pays to a mortgage creditor the amount of the note secured by the mortgage, with the effect of enabling such creditor to obtain a larger percentage of his debt than other creditors of the same class, such creditor having reasonable cause to believe that it was intended thereby to give him a preference, the amount so paid may be recovered from the creditor by the debtor's trustee in bankruptcy.

2. SAME—JURISDICTION—SUITS BY TRUSTEE.

 The district court, sitting as a court of bankruptcy, has jurisdiction, under the bankruptcy act, of a suit in equity by a trustee in bankruptcy against a mortgage creditor of the bankrupt to recover from the defendant sums of money paid to him by the bankrupt, within four months prior to the filing of the petition, in satisfaction of the note secured by the mortgage, where it is alleged that such payments constituted a preference voidable under the act.

In Equity. On demurrer to bill.

Dennis F. Cash and Frank J. Dwyer, for complainant.
E. E. Stephenson, for defendant.

BAKER, District Judge. This is a suit by the complainant, as trustee of the estate of Ernest H. Neibaum, a bankrupt, against the defendant, for the recovery of the amount of two payments alleged to have been made to it in fraud of the bankruptcy act. It

98 F.—45

is alleged that the bankrupt was indebted to the bank by a note of $1,200, secured by a mortgage, and that on November 7, 1898, the bankrupt paid on said indebtedness the sum of $500, and that on January 3, 1899, the further sum of $700 was paid, and that at the times these payments were respectively made to the defendant, and long before that time, the said Ernest H. Neibaum was insolvent, and that the effect of such payments was to enable the defendant to obtain a larger percentage of its indebtedness than any other creditor of the bankrupt of the same class, and at the times the defendant received the payments so made it had reasonable cause to believe that it was intended thereby to give it a preference, and that each of the payments was made to and received by the defendant within four months prior to the filing of the petition in bankruptcy against the said Ernest H. Neibaum. To this complaint the defendant has interposed a demurrer on the ground that the court is without jurisdiction to entertain the suit, and on the further ground that the complaint does not state facts sufficient to entitle the complainant to equitable relief. The last ground of demurrer does not seem to be seriously urged, and, in the opinion of the court, it is without merit. If the court possesses jurisdiction to entertain a suit to recover from the party receiving it money paid on a pre-existing debt when such payment is made in fraud of the bankruptcy act, then undoubtedly the complaint discloses a good cause of action.

Counsel for the defendant earnestly contends that the court possesses no jurisdiction to entertain a controversy at law or in equity for the recovery of any indebtedness by an adversary suit against a person who is a stranger to the bankruptcy proceeding. The defendant is not a party to the bankruptcy proceeding. The bankrupt, the trustee, and the creditors of the bankrupt include all who are, strictly speaking, parties to the bankruptcy proceeding. This court has held that it possesses jurisdiction to entertain a suit to recover property by adversary proceedings wherever a right of action is conferred on a trustee in bankruptcy for the recovery of property transferred or incumbered in fraud of creditors (Carter v. Hobbs, 92 Fed. 594); and it might dispose of the demurrer on the authority of that case. The insistence of counsel, however, justifies some further consideration of the question of jurisdiction. It is certainly true that the court has no jurisdiction unless it is conferred by the provisions of chapter 2, § 2, of the bankruptcy act. This section provides that: "The district courts are hereby made courts of bankruptcy and are hereby vested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings in vacation, in chambers and during their respective terms as they are now or may be hereafter held," to accomplish the purposes specified in the 19 subdivisions of the section which follow. The section expressly invests the district courts with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings to "cause the estate of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided." Manifestly, the controversies referred to cannot be those

relating to claims by creditors against the estates of bankrupts, for subdivision 2 of this section expressly provides for the disposition of all such claims and controversies. The controversies referred to in subdivision 7 must be those in reference to claims in favor of the estate against strangers to the bankruptcy proceedings proper,—that is, to controversies arising in the collection and administration of the estate,—or else we must impute to congress the folly of providing for the same thing in two independent subdivisions of the same section. By section 70, subd. "a," the trustee is vested with the title of all the property of the bankrupt as of the date of the filing of the petition, including all property transferred in fraud of creditors. It is provided in subdivision "e" of this section that the trustee may avoid fraudulent transfers, and recover the property, or its value. By section 67, subd. "e," all property fraudulently conveyed, incumbered, or transferred is made assets of the estate, and passes to the trustee, and it is made his duty to recover it by legal proceedings or otherwise; and by subdivision "f" of this section all levies, judgments, attachments, and liens obtained by legal proceedings within four months prior to the filing of the petition, and while the bankrupt is insolvent, are declared to be void, and the property passes to the trustee discharged of all such liens. By section 47, subd. "a," it is made the duty of the trustee to collect and reduce to money the property and assets of the estate. It follows from these provisions that these must be the controversies in relation to the bankrupt's estate referred to in subdivision 7, and they are controversies between the trustee and some party, not a creditor, whose interest is adverse to the estate; and they must also, from their nature, be controversies at law or in equity. From the foregoing considerations it would seem to be manifest that the district courts as courts of bankruptcy are vested with such original jurisdiction at law and in equity as will enable them in a bankruptcy proceeding to determine controversies between a trustee and an adverse party in relation to the estate of the bankrupt, except as otherwise provided.

Some courts of the United States, in determining the jurisdiction conferred by the present bankruptcy act, have applied to it the decisions under the act of 1867, and have held, in effect, that section 2 only confers jurisdiction upon the district courts to entertain bankruptcy proceedings simply, as distinguished from actions at law and suits in equity. They have apparently assumed that the jurisdictional provisions of the two acts are substantially the same. After an attentive consideration of the two acts, I find myself unable to concur in this conclusion. In my opinion, the jurisdictional provisions of the present act are to be interpreted from the language employed by giving it its plain and ordinary meaning, with a view to effectuate, rather than to defeat or embarrass, the purposes sought to be accomplished by its enactment. The two acts are the same only in the parts constituting district courts courts of bankruptcy, while in other respects they employ different language. The present act invests the district courts, as courts of bankruptcy, with such original jurisdiction at law and in equity as will enable them to exercise jurisdiction in bankruptcy proceedings to do 19 different

classes of things, among which are the collection and administration of the estate and the determination of controversies in relation thereto, while the act of 1867 gave the courts original jurisdiction in all matters and proceedings in bankruptcy, and by other provisions limited it strictly to proceedings in bankruptcy. Jurisdiction is the power to hear and determine a matter, and its nature and extent must depend on the matter to be heard and determined; and, since the act of 1867 gave the power to hear and determine all matters and proceedings in bankruptcy as restricted by other provisions of the act, the jurisdiction thereby conferred was such as was necessary to administer such a proceeding, and was special and limited, and was required to be exercised in a summary manner, and not in accordance with the forms of procedure at law or in equity. On the other hand, under the present act the power to hear and determine by appropriate forms of procedure in a bankruptcy proceeding the 19 classes of matters specifically named is directly granted, and the jurisdiction must, therefore, be of the nature and extent necessary and appropriate to entertain and determine each matter named. Inasmuch as some of these matters are formal and administrative, and others are controversies at law and in equity,—such as the determination of controversies in relation to the estate of the bankrupt,—it would seem necessarily to follow that the jurisdiction conferred must be special, and limited in respect of the former, and must be exercised in a summary way, while in respect of the latter it must be the general original jurisdiction at law and in equity essential to the hearing and determination of controversies at law and in equity, and must be exercised in the formal modes of procedure required in such proceedings.

What effect, then, by way of limitation, has the exception at the end of subdivision 7 of section 2? The exception must, of necessity, refer to some other part or parts of the act providing for the determination of controversies relating to the estates of bankrupts. The act discloses three methods of determining controversies in relation to such estates, other than by a suit in the district court. Section 23 gives the circuit courts of the United States jurisdiction of certain "controversies at law and in equity, as distinguished from proceedings in bankruptcy between trustees and adverse claimants." Section 26 provides that "the trustee may submit to arbitration any controversies arising in the settlement of the estate"; and section 27 also provides that the trustee "may compromise any controversies arising in the administration of the estate." In opposition to these views, it is claimed, and some courts have held, that the exception is intended as a limitation on the jurisdiction conferred by subdivision 7 of section 2, and that such limitation is found in subdivision "b" of section 23, which is construed as a provision that all adversary suits brought by a trustee must be brought in a state court, except such as may be brought in the circuit courts of the United States. In the case of Carter v. Hobbs, supra, such contention is shown to be indefensible; and, in addition to what is there said, there are other considerations which show that a construction of subdivision "b" which would wholly deny to district courts juris-

diction to entertain and determine controversies between the trustee and a stranger to the bankruptcy proceeding is untenable. Such a construction would take from the district courts as courts of bankruptcy the power to hear and determine those "controversies in bankruptcy proceedings" which are made the subjects of appeal by section 24. Those controversies must be of a legal or equitable character to be the subject of appeal, and they must be heard and determined by the district courts as courts of bankruptcy, because the appeal allowed is from those courts. Therefore, if section 24 is to be given any force and effect, the district courts as courts of bankruptcy must have jurisdiction of controversies at law and in equity, otherwise there could be no appeals from such courts under this section. Appeals in bankruptcy proceedings proper are provided for in section 25, subd. "a." Besides, subdivision "b" of section 23 affords persuasive evidence that the original jurisdiction at law and in equity conferred upon district courts as courts of bankruptcy by subdivision 7 of section 2 is not thereby taken from them, and that the contention is unfounded that the state courts, to the exclusion of district courts, have jurisdiction of all adversary suits brought by trustees in the collection and administration of the bankrupt's estate, except such as may be brought in the circuit courts of the United States. If any legal proposition may be regarded as settled with axiomatic certainty, it is that jurisdiction of the subject-matter of a controversy must be conferred upon judicial tribunals by statutory authority, and that such jurisdiction cannot be created or conferred by the consent of parties. Consent will confer jurisdiction of the person, but jurisdiction of the person, whether obtained by consent or by the service of process, will confer no authority on a court to hear and determine a cause judicially, unless jurisdiction of the subject-matter in controversy has been conferred upon such court by statutory authority. The consent of the defendant provided for in subdivision "b" presupposes that the district courts as courts of bankruptcy have jurisdiction of the subject-matter of all controversies embraced therein, and that the consent provided for simply confers jurisdiction of the person of the defendant; thus giving the court jurisdiction of the defendant by consent, jurisdiction of the subject-matter already existing by authority of the statute. It is apparent that subdivision "b" does not operate as a limitation upon the jurisdiction of district courts over the subject-matter of controversies growing out of the settlement of estates of bankrupts, but is impliedly an affirmation of the existence of such jurisdiction over the subject-matter. A very similar provision is found in the present judiciary act of 1887-88, which provides that no civil suit shall be brought before the national courts against an inhabitant of the United States by any original process in any other district than that of which he is an inhabitant. No one would contend that this provision was a limitation of the jurisdiction over the subject-matter of any controversy conferred on those courts in other sections of the statute. It in no wise operates as a limitation on their jurisdiction over the subject-matter. If an inhabitant is sued in any other district than that of which he is an inhabitant,

he is not compellable to submit his person to the jurisdiction of that court, if, before an appearance, in proper time and manner he presents the objection. It is, however, a mere personal privilege, which he may waive; and he does waive it by a general appearance to the suit. Under subdivision "b" the right of the defendant is not greater, for if, when sued in a district court, he appears, and fails in apt time and manner to claim his personal privilege, he will be deemed to have consented to be sued in such court. In Carter v. Hobbs, supra, this court held that district courts have jurisdiction of suits to recover property transferred or incumbered in fraud of creditors without the consent of the defendant, and that principle rules the present suit. It is not necessary now to determine whether, in other classes of controversies, suits would abate if the defendant seasonably availed himself of his personal privilege. The demurrer is overruled.