## THE PHILOMENA.

(District Court, D. Massachusetts. November 21, 1911.)

No. 540.

BANKRUPTCY (§ 210*)—JURISDICTION—SUIT TO ENFORCE MARITIME LIENS—EFFECT OF PROCEEDINGS IN BANKRUPTCY.

Under the settled law that admiralty courts have exclusive jurisdiction over maritime liens, and that other courts are powerless to establish and

enforce such liens, or to displace them, where the jurisdiction of an admiralty court has become complete in a suit to enforce such liens, by a seizure of the vessel before the institution of bankruptcy proceedings against the owner, it cannot properly surrender such jurisdiction to the court of bankruptcy, but should retain it for the purpose of determining all lien claims which may be asserted against the vessel in such suit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321-323; Dec. Dig. § 210.*]

In Admiralty. Suit by the Richard T. Green Company against the steamer Philomena. On petition by the receiver in bankruptcy of the Boston Fisheries Company, owner, that the marshal be ordered to turn over to him the proceeds of a sale of said steamer made under order of the court. Petition denied.

See, also, 200 Fed. 873.

Blodgett, Jones & Burnham, of Boston, Mass., for libelant and one petitioner.

J. M. Marshall, of Gloucester, Mass., Benjamin Thompson, of Portland, Me., and Alger, Dean & Sullivan, of Boston, Mass., for petitioners.

Fitz Henry Smith, Jr., of Boston, Mass., receiver, pro se.

DODGE, District Judge. In this libel a maritime lien for repairs and supplies to the amount of $629.15 is asserted against the steamer. The Boston Fisheries Company, her sole owner, was adjudicated bankrupt in this court on October 6, 1911, upon an involuntary petition filed September 14, 1911. A receiver of its estate in bankruptcy was appointed October 7, 1911.

The libel in admiralty was filed in this court September 9, 1911, before and within four months before the bankruptcy petition was filed. The vessel was arrested on the same day under admiralty process returnable September 22, 1911. She was in the marshal's custody under the warrant thus issued when the bankruptcy petition was filed, and also when her owner was adjudged bankrupt as above.

On October 3, 1911, the libelant moved for an order of sale, on the grounds that no claim had been filed, and that the expense of holding the vessel under arrest would be disproportionate. The vessel was on that day ordered to be sold on October 11th, but the sale was afterwards postponed by order of the court to October 21st.

On October 11th the bankruptcy receiver filed a claim in this case, and asked that possession of the steamer or the proceeds of her sale be delivered to him. The court, however, allowed the sale to proceed, and after it had been made the receiver filed his present petition on November 3d. This asks that the marshal be ordered to turn the proceeds of the sale over to him, instead of paying them into the registry of the court. It also asks that the court make such order as to proof of claims by persons claiming maritime liens upon the vessel or proceeds as law and justice may require. If the proceeds are to be turned over to the receiver, such orders would have to be made by the court sitting in bankruptcy.

The libel asserts a maritime lien for repairs and supplies furnished the vessel in January, 1911. Nine intervening petitions have been filed in the case, all asserting similar maritime liens. The first, filed on September 13th by Union Ice Company, was filed before the petition in bankruptcy. Six others—four on September 27th by Brown Bros. Company, George C. Tarr, Gloucester Coal Company, and John F. Souza, and one on October 3d and one on October 5th by Charles A. Marr and Bertelson & Peterson, respectively—were filed before the adjudication. Two, on October 13th by Pierce & Hartung and on November 3d by Staples Coal Company, have been filed after the adjudication.

The court is thus asked, in effect, to refrain from proceeding further in this admiralty suit, begun before the suit in bankruptcy had been started, and require the libelant and the intervening petitioners, in order to establish the rights they claim in this vessel, to appear in the proceedings for the administration of the estate of her owner in bankruptcy.

But it is settled that the admiralty courts have exclusive jurisdiction over maritime liens, and that as other courts are without power to establish and enforce such liens, so they are without power to displace them. Moran v. Sturges, 154 U. S. 263, 14 Sup. Ct. 1019, 38 L. Ed. 981; Paxson v. Cunningham, 63 Fed. 132, 11 C. C. A. 111; Hudson v. New York, etc., Co., 180 Fed. 973, 104 C. C. A. 129. It was said in Paxson v. Cunningham that an "admiralty court has peculiar rules of its own in some respects, which cannot be conveniently, if at all, applied by a court of equity or common law." 63 Fed. 134, 11 C. C. A. 113. It may well be that under the present Bankruptcy Act a bankruptcy court would encounter less difficulty in this respect than a court of equity or common law; but the fact remains that no admiralty jurisdiction has been given to courts of bankruptcy. Their powers over the bankrupt's property, once their jurisdiction has attached, and their power to determine questions regarding liens thereon, however strongly these may be stated (see Carter v. Hobbs [D. C.] 92 Fed. 594, Staunton v. Wooden, 179 Fed. 61, 63, 102 C. C. A. 355, and cases there cited), do not go to that extent. The admiralty court, therefore, cannot refuse to proceed, in an admiralty suit properly before it, wherein its jurisdiction over the property was complete before the bankruptcy proceedings were inaugurated; nor can it require the libelant, in order to get his lien established, to present and prosecute his claim in proceedings which, though also before it, are not proceedings wherein admiralty jurisdiction can be exercised. A materialman in such a suit is not to be regarded as prosecuting a claim provable in bankruptcy, but as asserting a right in the vessel libeled, irrespective of her ownership. He has the right in an admiralty court to be so regarded, and it is a right of which the court cannot deprive him. That his libel is filed within four months prior to the bankruptcy petition can in no event affect the question, because he does not obtain his lien by filing his libel, but seeks thereby to establish a pre-existing right.

To grant the receiver's application would be to make the proceeds

of this vessel's sale, which now constitute the fund from which maritime liens upon her are to be paid in the order of their priority under the maritime law, chargeable, before applying any of them to the satisfaction of such liens, with a share of the expense of administering the estate in bankruptcy. If this might properly be done when admiralty proceedings are had by consent of a bankruptcy court after its jurisdiction over the property has attached, as in Re Hughes (D. C.) 170 Fed. 809, I do not think it can be done with justice to the lien claimants when the admiralty court has acquired jurisdiction first, and it cannot be said that the entire vessel constitutes part of the estate which is to be administered in bankruptcy. Under such circumstances it seems to me that the bankruptcy court cannot administer, nor its trustee take title to, anything more than the bankrupt's interest in the vessel, which will be only so much of her or her proceeds as may be left after the maritime liens are satisfied.

The vessel having once been subjected to the jurisdiction of the admiralty court by her arrest, I think that court should hear and determine all the lien claims which may be asserted against her, whether presented to it before or after the filing of the bankruptcy petition or the adjudication in bankruptcy. In admiralty the order of priority among conflicting liens upon the same vessel does not depend upon the dates of filing of the libels or petitions in which they are asserted. The libelant may or may not have priority over any one of the lien claimants who have intervened in its suit since its libel was filed. The court cannot, therefore, while retaining jurisdiction of the libel, refuse it to any of the subsequent interveners, and require them to prove their claims in bankruptcy.

The receiver's application must therefore be denied, and the marshal will pay the proceeds of sale in the usual way into the registry of the court.