**CIEL Y CIA S.A., Plaintiff,**

v.

**NEREIDE SOCIETA DI NAVIGAZIONE PER AZIONI, et al., Defendants.**

**COMERCIA Y CIA S.A., Plaintiff,**

v.

**EGERIA SOCIETA DI NAVIGAZIONE PER AZIONI, et al., Defendants.**

**K/S DITLEV CHARTERING A/S CO., Plaintiff,**

v.

**EGERIA S.p.A. diNAVIGAZIONE, Defendant.**

**KAWASAKI HEAVY INDUSTRIES, LTD., Plaintiff,**

v.

**M/V SORRENTO, etc., et al., Defendants.**

and

**GRANDI MOTORI TRIESTE, S.p.A., Plaintiff,**

v.

**APPROXIMATELY 5,000 MACHINERY PARTS, et al., Defendants.**

Civ. A. Nos. 82–102–N, 82–103–N, 82–171–N, 82–183–N and 82–377–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 23, 1983.

Carter B.S. Furr, Richard T. Robol, Richard I. Gulick, Daniel R. Warman, Norfolk, Va., for plaintiffs.

Walter B. Martin, Jr., Norfolk, Va., for defendants.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on appeal by Ciel Y Cia S.A.; Comercia Y Cia S.A.; K/S Ditlev Chartering A/S Co.; Grandi Motori Trieste, S.p.A.; and Kawasaki Heavy Industries, Ltd. from the Bankruptcy Court's Orders of July 28, 1982, 20 B.R. 625, and January 14, 1983. These Orders removed certain matters involving the above four parties from the District Court to the Bankruptcy Court and purported to give the Bankruptcy Court jurisdiction to decide certain maritime claims.

This entire appeal essentially turns on this Court's interpretation of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We are asked to decide, in light of the Supreme Court's decision in *Marathon,* what are the outer limits of the Bankruptcy Court's jurisdiction? Does the Bankruptcy Court have jurisdiction to decide questions of maritime liens and ship mortgages which historically have been decided under admiralty law?

This problem was initially raised in this Court on June 8, 1982 when we were asked to rule on the propriety of allowing these cases to be removed to the Bankruptcy Court. However, it is important to note that June 8, 1982 was pre-*Marathon* and at that time, this Court was acting pursuant to the Bankruptcy Reform Act of 1978 which purported to grant expansive powers to the Bankruptcy Court. This Act professed to allow the Bankruptcy Court to hear and

determine any case, including one in admiralty, which "related to" the bankruptcy proceedings. In addition, the new Bankruptcy Code granted to the Bankruptcy Court original and exclusive jurisdiction in all cases under Title 11. In this case, the Italian commissioner of the bankrupt had filed his application for removal under Title 11, and the application was filed in connection with an ancillary bankruptcy proceeding arising under Title 11. With that in mind, this Court felt that the best course to follow would be to allow the Bankruptcy Court to make a determination of the limits of 28 U.S.C. § 1471 (the jurisdiction statute) and to allow the Bankruptcy Court to rule initially on the removal question.

Being so constrained, this Court deferred to the Bankruptcy Court to decide if removal was proper. However, we retained the right to eventually rule on the constitutionality of § 1471 if at some later date such a ruling became necessary. The Bankruptcy Court has now ruled that it does have jurisdiction to decide the questions here involved and it is now incumbent upon this Court to review these questions in light of *Marathon,* and decide if in fact the Bankruptcy Court can constitutionally decide admiralty questions. For the reasons to be set out below, we find that after the expiration of *Marathon's* stay, the expanded jurisdiction given to the Bankruptcy Court is no longer constitutional and that the Bankruptcy Court does not have subject matter jurisdiction over these cases. Therefore, removal was improperly granted. Alternatively, even if the Bankruptcy Court might have jurisdiction, this Court is exercising the power given to it by the Emergency Rule which went into effect on December 25, 1982, and we are WITHDRAWING these proceedings from the Bankruptcy Court.

As a means of possibly simplifying this opinion as much as possible, we have broken it down into two separate and distinct parts: (1) Subject matter jurisdiction, and (2) The Emergency Rule.

## SUBJECT MATTER JURISDICTION

■ As was pointed out initially, this Court felt constrained by 28 U.S.C. § 1471

to let the Bankruptcy Court make an initial determination of whether these cases should proceed in Bankruptcy or admiralty. Section 1471 reads:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall have all of the jurisdiction conferred by this section on the district courts.

The Bankruptcy Court has now ruled that it does have jurisdiction and the cases having been brought to this Court on appeal, we now respectfully REVERSE.

■ First among our reasons is the doctrine of *custodia legis.* Under this doctrine, once a vessel is in the custody of one court, other courts should defer to the jurisdiction of that court. This is clearly set out in an article cited repeatedly by *both* sides and which this Court was informed was the leading article on the subject. The article is "The Shipowner Becomes a Bankrupt" and it was written for the University of Chicago Law Review by Professor Jonathan Landers. In it, Professor Landers states:

If admiralty jurisdiction is based on an *in rem* action, it is painfully simple to tell whether a vessel will be administered in admiralty or in bankruptcy. The first court to obtain jurisdiction over the asset administers it. Thus, if the Marshal, pursuant to admiralty process has attached the vessel first, the admiralty court administers the asset.

Landers, *The Shipowner Becomes a Bankrupt,* 39 U. of Chi.L.Rev. 490, 493–94 (1972).

This proposition is also set out in Gilmore & Black, *The Law of Admiralty,* (2nd Ed. 1975):

When a ship has been seized by the Marshal under *in rem* process before the filing of a petition in bankruptcy, the ship does not come into the control of the Bankruptcy Court. The action cannot, therefore, be enjoined and will proceed to final adjudication and a sale of the ship unless the Bankruptcy Trustee has procured its release under bond.

*Gilmore & Black,* p. 807 and cases cited therein. *See also: Moran v. Sturges,* 154 U.S. 276, 14 S.Ct. 1019, 38 L.Ed. 981 (1893); *Wong Shing v. M/V Mardina Trader,* 564 F.2d 1183 (5th Cir.1977); *The Philomena,* 200 F. 859 (D.Mass.1911).

In the instant case, the bankruptcy petition was filed May 7, 1982. This was a full *three* months *after* the initial attachment of the *SORRENTO* (February 1, 1982) and more than *two* months *after* the *in rem* attachment (March 3, 1982). Clearly, the ship in question was within the jurisdiction of, and under the control of, the district court at the time of the filing of the Bankruptcy petition. As such, the vessel, and the claims against it, should not have been before the Bankruptcy Court. The Marshal, having attached the *SORRENTO* prior to the filing of the Bankruptcy petition, this Court sitting in admiralty was and is the proper forum to dispose of all claims against the vessel.

Accordingly, the doctrine of *custodia legis* demands that all of the claims against the vessel, *SORRENTO,* be heard and decided by this Court, sitting in admiralty.

Even disregarding the doctrine of *custodia legis,* the Bankruptcy Court does not have jurisdiction to hear these claims against the *SORRENTO.* This Court has ruled previously that after the expiration of the stay ordered by the United States Supreme Court in *Marathon* the Bankruptcy Court no longer has jurisdiction to hear "related to" proceedings (without district court approval) and that it is operating under "pre-Congressional expansion" of its jurisdiction. *See: KFC v. Stanley Ray Milton,* 27 B.R. 158 (D.C.Va.1983).

In *Marathon* the Supreme Court ruled that 28 U.S.C. § 1471 and 28 U.S.C. § 1478 improperly delegated Article III judicial powers to an Article I court and as such, these sections were unconstitutional. This ruling, however, was stayed until midnight December 24, 1982, in order to allow Congress to remedy the situation. Congress failed to correct the infirmities in a timely fashion and this Court finds that as of 12:01 a.m., December 25, 1982, the Bankruptcy Court could no longer constitutionally exercise "related to" admiralty jurisdiction.

Under its jurisdiction prior to Congress' unconstitutional attempt at expanding it, the Bankruptcy Court could not hear and/or decide admiralty questions. Any question of admiralty law was to be decided by an Article III court as opposed to an Article I court. In view of our holding that as of December 25, 1982, § 1471 "related to" jurisdiction is unconstitutional, and that the Bankruptcy Court is again operating within the constrictions of its jurisdiction "pre-Congressional expansion," it becomes necessary to decide if the questions to be decided in this case are admiralty or bankruptcy. It is clear to this Court, and we so find, that questions of admiralty dominate the issues to be decided. The entire case comes down to who, among various maritime claimants, takes priority over whom. The maritime claims in question include *in personam* maritime claims, *in rem* maritime liens and ship mortgages. Once again, referring to Professor Landers' article, which has been cited to the Court by both sides in this case, there does not seem to be much question but that these are admiralty issues. Professor Landers concludes unequivocally that maritime liens and ship mortgages are "distinctively maritime interests." *See: Landers, The Shipowner Becomes a Bankrupt,* at 491.

Additionally, 46 U.S.C. 951, which provides for preferred ship mortgages, states:

Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit *in rem* in admiralty. Original jurisdiction of all

such suits is granted to the district courts of the United States exclusively.

46 U.S.C. § 951 (1975).

Whether the Court is relying upon the fact that maritime liens and maritime claims are historically admiralty questions and that maritime attachments are a time honored means to secure such admiralty claims, or whether we are relying upon the explicit reading of 46 U.S.C. § 951, the result is the same. Although there are clearly some bankruptcy matters which will have to be addressed, the issues in this case are so tightly intertwined with what has traditionally been considered basic maritime law, that we feel only a court with admiralty jurisdiction can properly and constitutionally decide the questions.

Having found that "related to" jurisdiction granted by § 1471 is now unconstitutional and that admiralty questions dominate the issues in these cases, it follows that the Bankruptcy Court does not have jurisdiction to decide these cases. Accordingly, the cases shall be returned to the jurisdiction of this Court where all claims against the vessel, SORRENTO, will be adjudicated.

Counsel for the defendants have brought to the Court's attention a bankruptcy decision which they maintain demands an opposite holding by this Court. The case is *In the matter of George Clifford Culmer, G.A.D. Johnston and John Forsyth, as Joint Official Liquidators of Banco Ambrosiano Overseas Limited,* 25 B.R. 621, 9 B.C.D. 1283 (Bkrtcy.Va.1982), (hereinafter "Ambrosiano"). While this case does deal with 11 U.S.C. § 304 of the Bankruptcy Code, which is the same section the commissioner is proceeding under here, there is one striking and clearly distinguishing difference. In the case at bar, we are dealing with questions of admiralty. The very asset in dispute, the SORRENTO, is a ship. We have various creditors who have followed the historical and traditional means of protecting an admiralty claim, they have attached the ship in question. In *Ambrosiano,* the Court was dealing with certain bank accounts of the debtor. It is the unique and transient nature of admiralty claims which requires that creditors be allowed to pursue their claims wherever they may find and attach the debtor's ship. While we certainly make no finding on the correctness of the Court's decision in *Ambrosiano,* we do find that since the case at bar arises out of a maritime attachment and that the time honored means of protecting a maritime claim is through securing such an attachment wherever the ship can be found, that the case at bar is clearly distinguishable from *Ambrosiano* and should not be controlled by it.

## THE EMERGENCY RULE

■ Assuming for the sake of this portion of the opinion only, that the Bankruptcy Court does have jurisdiction to hear these cases, we nonetheless are withdrawing all of the cases pursuant to the power given the District Court by Emergency Rule (c)(2):

> The reference to a Bankruptcy Judge may be withdrawn by the District Court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any Bankruptcy matter pending before a Bankruptcy Judge unless a specific stay is issued by the District Court. If a reference is withdrawn, the District Court may retain the entire matter, may refer part of the matter back to the Bankruptcy Judge, or may refer the entire matter back to the Bankruptcy Judge with instructions specifying the powers and functions that the Bankruptcy Judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the Court's usual system for assigning civil cases.

*See:* Emergency Rule, Section (c)(2).

Briefly, our reasons for withdrawing the cases are as follows:

1) *Simplification.*

It has been represented to the Court that the Bankruptcy Court has set three separate dates for hearings on these cases.

 

There would be a separate date to decide the question of preferences, a separate date to hear the claim of Instituto Mobiliare Italiano, and a third separate date to rule on the plan submitted by the Commissioner. This Court feels that all of the questions can be decided in the District Court with only one hearing date. This is especially important in a case such as this where there may be expert and lay witnesses called from great distances to testify. The time and expense involved in deciding these cases on three separate dates would be prohibitive.

*2) Convenience.*

This is closely tied in with reason number 1. Since the Emergency Rule provides that this Court may hear the entire case *de novo* on appeal, it just does not make sense to require the parties to litigate the issues twice. Were this not such a peculiarly maritime question, we might not consider this such an important factor. However, on appeal, this Court might well hear the entire case *de novo* and indeed we might find it necessary to hear most, if not all, of the same testimony.

Accordingly, the cases which are here on appeal are WITHDRAWN from the Bankruptcy Court and will be set down for hearing in this Court.

## CONCLUSION

In summary, this Court finds that the doctrine of *custodia legis* commands that this Court administer over, and hear all claims relating to the vessel over which this Court has jurisdiction pursuant to an admiralty attachment.

Alternatively, we FIND that after the expiration of *Marathon's* stay, the Bankruptcy Court can no longer constitutionally exercise jurisdiction over an admiralty case, and that these cases are predominantly admiralty in nature.

Lastly, even assuming that the Bankruptcy Court somehow does have jurisdiction to hear these cases, we are exercising the power given to the District Courts pursuant to Emergency Rule (c)(2) and WITHDRAW these cases from any further Bankruptcy proceedings.

Accordingly, the decision of the Bankruptcy Court to remove these cases from the District Court is REVERSED and the same are to be WITHDRAWN from the Bankruptcy Court and placed back on the District Court's docket.

IT IS SO ORDERED.