BRENNAN *v.* STEAM-TUG ANNA P. DORR.

*(District Court, W. D. Pennsylvania.* November 17, 1880.)

1. ADMIRALTY JURISDICTION—SUIT IN REM.—In a suit *in rem* in admiralty, against a vessel, an actual seizure is necessary to confer upon the court jurisdiction over the vessel.

2. SUIT IN REM— PROCESS—RETURN OF MARSHAL.—To process issued in a suit *in rem* in admiralty, the marshal made return: " November 3, 1875, attached the steam-tug Anna P. Dorr, her tackle, etc., by serving a copy of this writ, personally, on John Carse, part owner of same, and by serving November 5, 1875, a copy of this writ at residence of Capt. E. F. Christian on wife." *Held*, that the return did not import a seizure of the tug.

In Admiralty. *Sur* motion to set aside *alias* writ of attachment.

ACHESON, D. J. This case is now before the court upon a motion made on behalf of Patrick Brennan and L. B. Fortier, to set aside an *alias* writ of attachment for the arrest of the steam-tug Anna P. Dorr, which was allowed by this court upon the *ex parte* application of E. F. Christian and John Carse, supported by an affidavit, alleging that, pending proceedings in the cause, the vessel had been clandestinely taken "out of the custody and jurisdiction of this court" by said Brennan.

The facts of the case, as they now appear to the court, are as follows: On October 27, 1875, Patrick Brennan, an owner of the one-fourth of said tug, filed a libel *in rem* for her sale, and the division of the proceeds between himself and his co-owners, Christian & Carse. To the process which then issued the marshal made a return in these words: "November 3, 1875, attached the steam-tug Anna P. Dorr, her tackle, apparel, furniture, etc., by serving a copy of this writ, personally, on John Carse, part owner of same, and by serving, November 5, 1875, a copy of this writ at residence of Capt. E. F. Christian on wife."

Christian & Carse appeared to the suit, and on November 15, 1875, filed an answer denying "the diversity of

opinion and interest among the owners in relation to the employment and management" of the tug alleged in the libel, and praying the court to pronounce against the libel.

In the answer it is alleged "that said tug *now is*, and has been during the season of navigation of 1875, engaged in her usual employment in and about the port of Erie," etc. Again, it is alleged "that the said tug *is now*, and has been during the entire season of navigation, employed and run for the joint interest and profit of the owners," etc.

From the evidence now before the court it appears that the marshal did not arrest or take possession of the tug by virtue of said process. He was instructed by the libellant's proctors not to arrest her, but simply to serve a copy of the writ upon Christian & Carse, and these instructions he obeyed. At the time the libel was filed the tug was in the possession of Christian, and she remained in his possession as fully after the service of the writ as before; and down until May 12, 1877, the tug was run by Christian in and about the harbor of Erie, and upon the lake, in her ordinary business. During all this time no further step was taken in this suit.

On the night of May 12, 1877, the libellant, Brennan, having obtained possession of the tug, ran her out of the harbor of Erie and took her to Buffalo, New York; and there, on May 14, 1877, filed a libel *in rem*, in the United States district court for the northern district of New York, for the sale of the vessel and distribution of the proceeds among the owners. Thereupon process issued and the boat was seized by the marshal of said last-named district. No answer having been interposed, an interlocutory decree in that suit was entered, and a final decree for the sale of the tug was made on July 25, 1877. Subsequently, E. F. Christian moved that court for an order opening his default and permitting him to defend the action, and vacating the decree and subsequent proceedings, and for an order dismissing the suit, on the ground that, in consequence of a prior action pending, the court had no jurisdiction in the premises.

The exemplification of the record of the United States dis-

trict court for the northern district of New York, now before me, shows that at the hearing of that motion a copy of the record of this court in this case was produced, and affidavits on both sides submitted, showing that the tug had not been seized by the marshal of the western district of Pennsylvania, but was left in the possession of Christian, and the circumstances under which she was taken out of the harbor of Erie. On April 15, 1878, the court denied the motion of Christian, and subsequently the marshal of the northern district of New York, under his writ of *venditioni exponas,* sold the tug to L. B. Fortier for $3,250.

The purchase money having been paid to the marshal, and by him paid into court, Christian & Carse, by Sprague, Gorham & Bacon, professing to act as their proctors, petitioned the court for an order distributing the funds; and, such order having been made, the above-named proctors, on July 16, 1878, received and receipted for the shares of Christian & Carse, in their name and behalf.

It is, however, alleged, by Christian & Carse, that this action on the part of Sprague, Gorham & Bacon was wholly unauthorized and never ratified by them; and they further allege that L. B. Fortier acted and conspired with Brennan in seizing and taking the tug from Erie to Buffalo, in contempt (as they suppose) of the process of this court. Whether or not these allegations are true, it is not necessary to consider in disposing of the present motion.

The United States district court for the northern district of New York having passed upon the question of jurisdiction, and its final decree standing unreversed and unappealed from, that decree would be recognized and acquiesced in by this court, even were I of opinion that its decision upon the question of jurisdiction was erroneous. But I do not entertain such opinion.

In *Miller* v. *United States,* 11 Wall. 294, it is said: "In revenue and admiralty cases a seizure is undoubtedly necessary to confer upon the court jurisdiction over the thing when the proceeding is *in rem.* In most of such cases the *res* is

movable personal property, capable of actual manucaption. Unless taken into actual possession by an officer of the court, it might be eloigned before a decree of condemnation could be made, and thus the decree would be ineffectual. It might come into the possession of another court, and thus there might arise a conflict of jurisdiction and decision if actual seizure and retention of possession were not necessary to confer jurisdiction over the subject."

In the present case it is certain that there was no actual seizure of the tug by the marshal under the original process issued out of this court. Acting in accordance with the express instructions of the libellant the marshal did not seize the tug, but, with the acquiesence of all the parties in interest, she remained in the possession of Christian. Of this, I may here say, none of the owners, under the circumstances of the case, have any right to complain.

But it is said that the marshal's return shows an attachment of the vessel. I do not think so. True, the language of the return is, "attached the steam-tug Anna P. Dorr." But how? "By serving a copy of this writ personally on John Carse, part owner of same, and by serving, November 5, 1875, a copy of this writ at residence of Captain E. F. Christian on wife." But such service of the writ was not an attachment or seizure of the vessel.

The return, as a whole, does not import any seizure of the tug, and it is entirely consistent with the facts as they appear *aliunde*.

It follows, from what has been said, that the order allowing the *alias* attachment in this case was erroneously made. Certainly that order would not have been made had the court been fully advised as to the facts, or had the proceedings in the United States district court for the northern district of New York been brought to its attention.

And now, November 17, 1880, the *alias* attachment is set aside; and it is ordered that the marshal deliver the said steam-tug Anna P. Dorr to L. B. Fortier; and it is further ordered and decreed that E. F. Christian and John Carse

pay the costs of said *alias* writ, and all subsequently-accruing costs, including the marshal's costs in connection with the seizure and custody of the boat; the same to be taxed by the clerk.