In re CONSUMERS' COFFEE CO.

(District Court, E. D. Pennsylvania. March 8, 1907.)

No. 2,252.

BANKRUPTCY—LANDLORD'S LIEN—PRIORITY.

The priority of a landlord's lien given by a state statute for rent in arrears at the time proceedings in bankruptcy were begun, while preserved by Bankr. Act July 1, 1898, § 64, cl. "b" (5) c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448], giving priority to debts owing to any person who by the laws of the state is entitled to priority, does not entitle such landlord's claim to priority over all other claims whatever, but only over those not specified in such section as being higher in right.

In Bankruptcy.

J. Frank Staley, for petitioner.
Henry N. Wessel, for creditors.

J. B. McPHERSON, District Judge. This is a claim by a landlord to be paid in full for rent accrued at the date of filing the petition, before any other payments are made out of the fund. The facts appear. in the following report of the referee, David W. Amram, Esq.:

"The petitioner was landlord of premises 236 Chestnut street, occupied by the Consumers' Coffee Company, bankrupt. On May 15, 1905, three months rent, amounting to $750, was due to him. On May 18, 1905 a petition in bankruptcy was filed against the Consumers' Coffee Company, the tenant. A receiver was appointed, who, acting under order of the District Court, continued the business of the bankrupt for about one year. On April 9, 1906, an adjudication in bankruptcy was entered, and the matter referred to me as referee. On May 1, 1906, at an adjourned first meeting of creditors, at which the landlord was represented, the receiver filed a petition, praying for leave to sell the assets of the bankrupt estate, upon the said premises, 236 Chestnut street, at private sale, for the sum of $700. After due notice to creditors the said petition was considered at an adjourned first meeting of creditors, held May 15, 1906, at which the landlord was represented, and, no one objecting, approved and an order made by me, authorizing the trustee to sell in accordance with the prayer of the petition. On the same date, to wit, May 15, 1906, the landlord filed several proofs of debt, among them a proof for his said claim of $750, for rent due May 15, 1905.

"It is alleged by the petitioner that before the above-mentioned private sale of the assets, he gave notice to the receiver that he had a lien on the fixtures at said premises, 236 Chestnut street, for the rent due prior to the filing of the petition in bankruptcy, and directed him to hold the fixtures or to earmark the fund arising from the sale of the same. The receiver having failed to file an account, the landlord filed a petition for citation on the receiver to show cause why he should not forthwith file his account. An order was made thereon, and, in compliance therewith, the receiver filed his account on October 12, 1906. At a special meeting of creditors, called for the purpose of auditing said account, held October 25, 1906, the receiver did not appear, and the landlord, through his attorney, prayed for an order on the receiver to appear at a subsequent meeting with his books and records, which order was made and a certified copy thereof served on the receiver by the landlord. At an adjourned special meeting, held November 1, 1906, the receiver appeared, the landlord was present and represented, and an examination of the receiver was commenced by Henry N. Wessel, Esq., acting for the creditors. Before the examination was concluded the attorney for the landlord made a formal oral application of record for the payment of the $700, arising from the sale of the fixtures at 236 Chestnut street, and further proceedings in the matter and examination of the receiver were discontinued, pending the consideration of this application. On November 23d the landlord filed a formal petition, praying for an order on the receiver to pay over to him the said sum of $700; the reasons alleged by the landlord for this demand are that he had a lien on the fixtures in said premises at the time of the bankruptcy, and that, as these fixtures were the same as the ones subsequently sold by the receiver, the receiver sold them subject to his landlord's lien, and that therefore he was entitled to the entire proceeds of the sale thereof inasmuch as his claim for rent exceeded the amount realized.

"It appears from the receiver's account that the total assets in his hands, as of the date of the filing of his account, were $807.98, in which sum are included the $700 received from the sale of the fixtures at 236 Chestnut street. His liabilities, as of the date of the filing of his account, contracted by him while conducting the business under order of court, appear to be $5,086.48. The examination of the receiver was commenced by the attorney acting on behalf of the creditors, for the purpose of ascertaining the manner in which the receiver conducted the business, and for the purpose of making proper inquiry as to the reason for this extraordinary condition of the receiver's account. The liability of the receiver to the claimants set forth in his account has not yet been formally established, nor has the amount of the expenses of

the administration been fixed; nevertheless the landlord insists that he is entitled to immediate payment of the amount of rent due to him before the expenses of administration or the debts contracted by the receiver, either in preserving the assets or conducting the business, can be paid.

"The landlord is a creditor, entitled to priority of payment under section 64b (5), Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]. He has proven his debt in proper form, and after other debts entitled to priority of payment, as set forth in the said section of the act, have been paid, his claim will be entitled to payment before any of the unsecured creditors of the bankrupt. He alleges, however, that he is not merely a creditor, but that he had a lien on the assets of the bankrupt estate, which lien is preserved and recognized by the bankruptcy law. Section 67 of the act (30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), sets forth the law with regard to liens on property of the bankrupt estate. I am not aware of any decision which justifies the view of the landlord, but merely by virtue of the contract of lease he is a lien claimant, in the sense in which the term is used in the act. On the contrary, the decisions are to the effect that the landlord is merely a creditor, who must prove his debt, but who is entitled to priority of payment in the bankruptcy proceedings if such priority is given to him under the laws of the state. I cannot agree with the position taken by the landlord that he has higher rights to the fund in the hands of the receiver than the creditors of the receiver, and that his claim is entitled to payment before the expenses of administration, or any of the other debts which have priority under the first four clauses of section 64b of the bankruptcy law.

"Apart from this view of the matter, I have very serious doubts as to whether the landlord, assuming that he had a lien, has not waived it by reason of his consent to the receiver's possession of the assets [which he claims as subject to his lien] for upwards of a year, and his failure to make any effort to have his rights as lien claimant established.

"The petition is dismissed."

In my opinion the learned referee was right in dismissing the landlord's petition. Even if a lien, properly so called, exists under the Pennsylvania statute for the rent in arrear at the time when the proceedings in bankruptcy were begun, the statute cannot override the act of Congress. While the priority of the landlord's claim is undoubtedly preserved by clause "b" (5) of section 64, this priority is not over all other claims whatever, but only over those that are not specified in the section as being even higher in right. The order of distributing the assets of a bankrupt having thus been expressly laid down by Congress, that order must be followed by a federal court.

Moreover, I incline to doubt whether clause "d" of section 67 can be properly construed to include a landlord's lien under the Pennsylvania statute. This is the only clause that can be held to support the petitioner's contention, and it is certainly a matter for serious consideration whether a lien that exists, if at all, only by operation at law, falls within the class of "liens given or accepted in good faith, etc." Such a lien is neither "given" nor "accepted"; it exists without action by either the landlord or the tenant, and depends for its being wholly upon the statute.

The construction could not be said to do violence to the ordinary meaning of the clause, which held that a tenant did not "give" such a lien, nor did the landlord "accept" it. But even if it be conceded for present purposes that clause "d" includes the lien in question, it must be read in connection with clauses "a" and "b" of section 64, and must be so construed as to harmonize therewith, if harmony can be reached by a fair construction. Taking both clauses together, therefore, I

think clause "d" of section 67 may perhaps be held equitably to pre-
serve the lien, while the order of its payment is to be determined by
section 64.

The decision of the referee is affirmed.