## In re WEST SIDE PAPER CO.

(District Court, E. D. Pennsylvania. February 10, 1908.)

### No. 2,673.

1. **LANDLORD AND TENANT—DISTRESS—PARTIES.**

    Where a landlord did not accept the tenant's assignee as a substituted tenant, the original lessees were properly named as defendants in a distress warrant for failure to pay rent.

2. **SAME—OWNERSHIP OF GOODS—WARRANT AGAINST PERSON.**

    A landlord's distress warrant, though really directed against the lessee, is in fact against movable property found on the leased premises, the ownership of which, as against the landlord, is in general immaterial.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 1098.]

3. **BANKRUPTCY—LIENS—DISTRESS PROCEEDINGS.**

    Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450], provides that all levies or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a bankruptcy petition against him shall be void in case he is adjudged a bankrupt, and the property affected by the levy or lien shall pass to the trustee discharged of the lien, etc. *Held*, that where a landlord's distress warrant, issued as authorized by 2 Purd. Dig. (13th Ed.) p. 2174 et seq., against the lessees, was in fact levied on the goods of an assignee of the lease found on the premises within four months prior to the filing of a bankruptcy petition against the latter, such distress proceeding, though in form against the original lessees, was in fact against the bankrupts, so that the lien acquired thereby was discharged by section 67f.

4. **SAME—PRIORITY—QUALIFIED PREFERENCE.**

    2 Purd. Dig. Pa. (13th Ed.) p. 1558, § 83, provides that goods on leased premises taken by virtue of an execution and liable to the distress of the landlord shall be liable for not to exceed one year's rent at the time of taking; and section 84 declares that after sale by the officer of any such goods he shall first pay from the proceeds the rent so due, and the surplus shall be applied to the execution. *Held*, that a landlord under such act being entitled to priority of payment out of chattels distrained for rent, such preference will be allowed in bankruptcy proceedings against the owner of the chattels as a preferred claim, within Bankr. Act July 1, 1898, c. 541, § 64b, cl. 5, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], providing for payment of debts owing to any person who by the laws of the states is entitled to priority.

In Bankruptcy. On certificate of referee concerning claim of landlord to priority.

Francis G. Gallagher, for claimant.

Charles Sinkler, for trustee.

J. B. McPHERSON, District Judge. The learned referee (Joseph Mellors, Esq.) refused to allow the landlord to be first paid out of the proceeds of certain personal property upon which he had distrained previous to the filing of the petition in bankruptcy. The distress, which was for six months' rent, was stayed by the court. The property was sold by the trustee, and the referee postponed the landlord to the costs of the proceeding and to wages due to workmen, holding that Act July 1, 1898, c. 541, § 64b, cls. 3, 4, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], gave precedence to claims arising thereunder. To this rul-

159 F.—16

ing the landlord objected, asserting that he had obtained a valid lien by his distraint, to which the trustee's title was subordinate.

The distress was levied on November 27, 1906, the day before the petition in bankruptcy was filed and the adjudication was entered, and there is no doubt that a lien was acquired by the levy and that (if nothing else is to be considered except these facts) the trustee's title, which is no better than the bankrupt's, was subject to the lien and could only be made fruitful after the landlord had been fully satisfied. But there is a most important matter to be considered before the landlord's position can be agreed to, namely, the bankrupt act itself, which has not overlooked the possibility that liens of apparent validity might have been acquired against a bankrupt's property during four months preceding the filing of a petition against him, and has made careful provision concerning their ultimate validity and effect. At present it is only necessary to refer to paragraph "f" of section 67, which declares:

"That all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt," etc.

This language includes a lien such as was acquired by the levy under consideration (Re Dougherty Co. [D. C.] 109 Fed. 480); and, since the lien was obtained through legal proceedings that were taken under the Pennsylvania statutes (2 Purd. Dig. [13th Ed.] p. 2174 et seq.), and was acquired within four months preceding November 28th, it is expressly made null and void, and can furnish no support for any claim whatever against the bankrupt estate. I am speaking now solely of the lien acquired by the levy, and am not referring to such support as the act of 1836, to which I shall advert in a moment, may offer to a qualified claim for payment in full. As I understand the argument on behalf of the landlord, the general proposition is accepted that a lien acquired by distraint within four months of the bankruptcy is avoided by paragraph "f" of section 67; but it is insisted that this paragraph must be confined to its precise terms, and that a lien is not obnoxious thereto unless it has been acquired by proceedings against a person who is insolvent—that is (as the rest of the paragraph shows), against the person who is afterwards adjudged a bankrupt. Therefore, the argument proceeds, the lien in controversy is not affected by the act, because it was acquired by a legal proceeding against perfectly solvent persons, who have not been adjudged bankrupt, and, indeed, have not been petitioned against at all.

Upon this point the facts necessary to understand the argument are briefly these: The landlord leased certain real estate to MacAlpin & Son, by whom the lease was lawfully assigned to the bankrupt corporation. The landlord, however, did not accept the paper company as a substituted tenant, although he knew that the assignment had taken place and that the bankrupt had gone into possession, but preserved his right to hold the original lessees for the rent. The dis-

tress warrant was directed against MacAlpin & Son, by name, but was levied, not upon their goods, but solely upon the personal property of the paper company; this being found upon the demised premises. At the time of the levy the company was insolvent, while it is agreed that both the original lessees were solvent persons. It will be seen, therefore, that the success of the landlord's contention that his lien is not affected by section 67 depends entirely upon his ability to convince the court that the lien was acquired, not by proceedings against the insolvent corporation at all, but by proceedings against MacAlpin & Son, who are agreed to be financially responsible. But, in my opinion, this contention cannot be sustained. It is true that the warrant of distress is directed against MacAlpin & Son by name, thus making them formal defendants; but they were defendants in form only although it was perfectly proper to name them in the warrant, for they were the original tenants, and were still bound by their express agreement to pay the rent, and such of their property as might be found upon the demised premises was liable to seizure and sale in satisfaction of the landlord's claim. But a landlord's warrant is not really directed against a person, but against movable property found upon a definite piece of ground, and it makes no difference to the landlord who may be the owner (with certain exceptions not now material), as long as the goods are discovered upon the demised premises. 9 Am. & Eng. Ency. Law (2d Ed.) 618, 619; 24 Cyc. 1280, E. In the present case, the bankrupt's property was upon the land, and the landlord seized it, as he had a right to seize it, merely because it was in that particular place, and not because it had any connection with the persons formally named in the warrant. The levy was not upon property belonging to MacAlpin & Son, but to the bankrupt, and, as this property was liable to distress simply because it was upon the landlord's ground, it seems clear that the proceedings were in substance and in reality directed against the bankrupt itself, and not against MacAlpin & Son at all, save in a merely nominal sense. I think, therefore, as I have already stated, that the lien of the levy was a lien acquired through legal proceedings against the bankrupt, and is avoided by the paragraph heretofore quoted.

But, while the bankrupt act makes ineffectual the claimant's attempt to acquire a lien by levy, nevertheless his right to a qualified priority rests upon a satisfactory foundation, although his claim to be paid in full out of the fund before any other person whatever cannot be sustained. His right to a qualified priority rests upon sections 83 and 84 of the Pennsylvania statute of June 16, 1836 (P. L. 777; 2 Purd. Dig. [13th Ed.] p. 1558, note "m"), which provide as follows:

"Sec. 83. The goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life or years or otherwise, taken by virtue of an execution and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: Provided, that such rent shall not exceed one year's rent.

"Sec. 84. After the sale by the officer of any goods or chattels as aforesaid, he shall first pay out of the proceeds of such sale the rent so due, and the surplus thereof, if any, he shall apply towards satisfying the judgment mentioned in such execution," etc.

Under these provisions it was held by the Supreme Court of the United States, in Longstreth v. Pennock, 20 Wall. (U. S.) 575, 22 L. Ed. 451 (1874), that where an assignee in bankruptcy under the act of 1867 seized goods that were upon the demised premises and were liable to distress, the seizure so far resembled a levy under execution as to be within the equity of the Pennsylvania statute, and therefore that the landlord was entitled to be paid in full out of the fund derived from a sale of the goods before a dividend should be paid to creditors generally. Judge Cadwalader had made a similar ruling in this district several years before (1868) in Re Appold, Fed. Cas. No. 499, 1 Nat. Bkcy. Reg., folio page 178; and this ruling was followed under the present act in Re Gerson, 8 Pa. Dist. R. 277, where a careful discussion of the subject by a very capable referee (the late Joseph Mason) may be read with advantage. See, also, Re Hoover (D. C.) 113 Fed. 136 (Buffington, D. J.); Wilson v. Penna. Trust Co., 114 Fed. 742, 54 C. C. A. 374; Re Mitchell (D. C.) 116 Fed. 87 (Bradford, D. J.); and Re Duble (D. C.) 117 Fed. 794 (Archbald, D. J.).

By virtue, therefore, of the Pennsylvania statute, a landlord is entitled to priority of payment not exceeding the rent for one year, and this preference will be recognized by a court of bankruptcy in obedience to the direction of section 64b (5). But, as the claim to priority in the federal court can only be allowed because the bankrupt act, and not the Pennsylvania statute, proprio vigore, requires such an allowance, it follows that the landlord must urge his claim in subordination to the federal act, and can only be paid in full after certain other claims, which the act has declared to be higher in right, have been first discharged. These are specified in section 64b, and among them are: "(3) the cost of administration," etc.; "(4) wages due," etc.— both classes being made superior to the landlord's claim for rent, which takes rank under clause 5. The exact point arose recently in this district in Re Consumers' Coffee Co. (D. C.) 151 Fed. 933, and was decided against the position now taken by the claimant.

The decision of the referee is affirmed.

[Per contra, see In re Morris, 159 Fed. 591.—Ed.]