### In re HUGHES.

#### (District Court, D. New Jersey. February 15, 1909.)

BANKRUPTCY (§ 347*)—PROPERTY SOLD IN ADMIRALTY PROCEEDINGS—LIABILITY FOR COSTS AND EXPENSES.

An adjudication in bankruptcy operates in rem, and from the time it is entered the bankrupt's property is in the custody of the court, and where a part of such property consists of vessels they cannot be thereafter taken from its custody by the marshal in admiralty proceedings without its consent; and if by such consent they are so taken and sold in suits to enforce maritime liens, the proceeds are subject to the payment of the necessary cost incurred by the bankruptcy court in preserving the property before it was turned over and the costs of administration, which by Bankr. Act July 1, 1898, c. 541, § 64b (1), (3), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), were entitled to priority over the admiralty liens.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 347.*]

In Bankruptcy. On exceptions to master's report.

George S. Silzer, for receiver in bankruptcy.

Currier & Barnard, for exceptant Frank McWilliams.

Horace L. Cheyney, for exceptant Charles L. Walker.

De Lagnel Berier, for exceptant Hudson Oil & Supply Co.

Cushman & Dewell, for exceptants Perth Amboy Dry Dock Co. and John H. Starin.

LANNING, District Judge. On January 30, 1908, at 2 o'clock in the afternoon, Frank McWilliams filed in this court a libel in admiralty for $1,992.23 against the barge Falcon. A monition was issued on the same day, and on January 31st the marshal attached the vessel. On January 30th, at 4 o'clock in the afternoon, James Hughes, the owner of the Falcon, filed in this court his petition in voluntary bankruptcy. Adjudication was immediately entered, and Theodore B. Booraem was immediately appointed receiver of the bankrupt's estate. The receiver did not file his bond, however, until February 3d. The bankrupt's estate consisted of 35 barges used for carrying freight, besides other property. At the date of the receiver's appointment, the barges were at a number of different ports in the vicinity of New York, and some of them were discharging cargoes. It was necessary to retain, for a little time, the crews of the vessels discharging cargoes. It was desirable, also, to bring all the vessels into the district of New Jersey. As the receiver had no funds, he was authorized, by order of February 7th, to borrow $500 on the credit of the estate and to issue receiver's certificates therefor. On March 2d a considerable number of parties who claimed to hold maritime liens against the bankrupt's several vessels appeared by counsel and applied for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

leave to file libels in admiralty. The court, actuated by a desire to keep the judicial and administration expenses down to the lowest possible point, ordered the trustee in bankruptcy—the receiver having in the meantime been appointed as trustee—to sell the vessels at public auction and to keep a separate account of the proceeds of the sale of each vessel. On March 23d a number of counsel appeared before the court and vigorously protested against the order authorizing the trustee in bankruptcy to sell the vessels, denied his right to sell free from maritime liens, and insisted upon their right to file libels and have the sales made by the marshal in admiralty proceedings. In view of the statement that there were not less than 60 maritime claims against the vessels—the number now shown is 274—and of the fact that sales by the trustee would almost certainly be followed by suits in admiralty against the vessels in the hands of the trustee's vendees, and, consequently, by protracted and expensive litigation, the court vacated the order directing the trustee to sell and granted permission for the filing of libels. Libels have been filed against 25 of the vessels, and they have been sold by the marshal, in due course, in admiralty proceedings.

On June 8, 1908, the court made an order in the bankruptcy case, on the petition of the trustee as former receiver, directing George T. Cranmer, as special master, to examine into the truth of the allegations of the petition, and to report to the court what expenses had been actually incurred by the receiver, whether they had been properly incurred and were necessary for the preservation of the assets of the estate, and what sums, if any, should be allowed to the receiver and his counsel for their services. The master has now filed his report. It shows the receiver's total approved disbursements to have been $1,028.77, and his approved unpaid bills to be $930.14. Other indebtedness reported by the master is $350 due to the Central Railroad Company of New Jersey for wharfage charges against the vessels after the marshal took possession of them in the admiralty proceedings. He also advises allowances of $412.94 to the receiver and $250 to his counsel for their services. He suggests that the allowance for his own services be fixed at $175. The master declares that every item in the disbursements of $1,028.77 was for the benefit of the maritime assets of the bankrupt. His report shows, also, that the unpaid bills, amounting to $930.14 and $350, were exclusively for the benefit of the same assets. The allowances of $412.94 to the receiver, of $250 to his counsel, and of $175 to the master, are very reasonable. The total of these sums, being $3,146.85, the master regards as expenses properly chargeable against the maritime assets, and advises that they be paid out of the funds deposited in the registry of this court to the credit of the vessels sold in the admiralty proceedings. The proceeds of the sales of the 25 vessels, deposited in the registry, are $7,492.51. The expenses ($3,146.85) amount to 42 per centum of the $7,492.51. The master has charged against each of the 25 vessels 42 per centum of the amount on deposit to the credit of such vessel.

One of the grounds of complaint set forth in the exceptions to the report is that no part of the expenses incurred in bankruptcy can be charged against the sums deposited in the registry of this court. It

should be borne in mind that all the vessels, except the Falcon, were in the possession of the receiver in bankruptcy at the time the libels were filed. The charges of $1,028.77 and $930.14 are for debts incurred in caring for the vessels before the marshal took possession of them. The item of $350 is for wharfage incurred after the marshal took possession. These sums are properly chargeable against the proceeds in the registry, because they represent debts incurred after this court took possession of the vessels, for the purpose of properly caring for them until the time of judicial sale. The maritime claimants have had the benefit of every dollar of these expenses. In the case of In re People's Mail Steamship Co., Fed. Cas. No. 10,970, Judge Blatchford enjoined a proceeding in admiralty instituted after the owner of the libeled vessel had been adjudged bankrupt. He said:

"The possession of the vessel by the assignee is the possession of her by the court. That possession cannot be lawfully disturbed or ousted by any person. If the libelants in the collision suit have a lien on the vessel, created by the fact of the collision, which is entitled to be satisfied out of the vessel in preference to the claims of creditors under the bankrupt proceedings, that lien, inasmuch as proceedings to enforce it were not commenced before this court took possession of the vessel for administration in those proceedings, can be enforced, so long as this court holds possession of the vessel, only by being submitted, by those claiming it, to the arbitrament of this court sitting in bankruptcy."

That these vessels, while they were in the custody of this court sitting in bankruptcy, could not be taken from its receiver in bankruptcy and given over to the marshal in any admiralty proceeding, without the court's consent, is too clear to require argument. Taylor et al. v. Carryl, 20 How. 584, 15 L. Ed. 1028. As already stated, the court consented to the sale of these vessels in admiralty for the purpose of avoiding protracted and expensive litigation; but it did not release the vessels from the charges justly and necessarily incurred in caring for them before the surrender to the marshal.

Nor are the objections to the items allowed to the receiver or his counsel valid. These expenses, too, were incurred in caring for the vessels. All the expenses, except the $175 allowed to the master, were the "actual and necessary cost of preserving the estate subsequent to the filing of the petition," and the allowance to the master is a part of "the cost of administration." Such costs are entitled, by virtue of section 64b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), to priority of payment. That section states the order of the payment of preferred debts. Costs of the kind above referred to are placed before "debts owing to any person who by the laws of the states or the United States is entitled to priority." A debt secured by a maritime lien is therefore inferior, under the bankruptcy law, to such costs. In re West Side Paper Co. (D. C.) 159 Fed. 241, 244.

What has been said applies to all the vessels except the Falcon. She was attached on January 31, 1908, by the marshal under the admiralty proceedings instituted in this court by Frank McWilliams. While the receiver in bankruptcy did not qualify until February 3d, adjudication in bankruptcy was entered on January 30th. A receiver in bankruptcy is but an agent of the court to see that a bankrupt's

property is not dissipated before the appointment of a trustee. His custody is the court's custody. From the moment of adjudication the decree operates in rem, and from that moment all the bankrupt's assets are in the custody of the court making the adjudication. Carter v. Hobbs (D. C.) 92 Fed. 594. The appointment of a receiver does not in any wise perfect the court's custody. It is simply an act by which the court designates a person in whom it has confidence to represent it in guarding and enforcing that custody. In an admiralty suit in rem, on the other hand, a vessel is not in the custody of the court until it is actually arrested. Miller v. United States, 11 Wall. 294, 20 L. Ed. 135; Brennan v. Steam Tug Anna P. Dorr (D. C.) 4 Fed. 459. The case of the Falcon, therefore, is not distinguishable from the other cases. That vessel was in the custody of the bankruptcy court when it was attached by the marshal, as were all the other vessels.

The exceptions will all be overruled, and the report of the master confirmed. The clerk will draw from the proceeds of the sale of each individual boat now standing to the credit of such boat in the registry of this court the amount of expenses properly chargeable to such boat, as set forth on pages 24 and 25 of the special master's report, and place the amounts so drawn from said proceeds to the credit of the expense fund, and from said fund he shall then pay the various items of expenses summarized on page 21 of said report.