## THE BETHULIA.

(District Court, D. Massachusetts. November 21, 1911.)

No. 539.

BANKRUPTCY (§ 210*)—JURISDICTION—SUIT TO ENFORCE MARITIME LIENS—
EFFECT OF BANKRUPTCY PROCEEDINGS.

Where a suit in admiralty to enforce maritime liens against a vessel was commenced before the filing of a petition in bankruptcy against the owner, but the vessel was not arrested until after the filing of such petition, whether the court of admiralty or of bankruptcy is entitled to possession, the court of admiralty will retain it for the purpose of determining all questions of maritime liens.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. § 210.*]

In Admiralty. Suit by the Lockwood Manufacturing Company against the steamer Bethulia. On petition of the receiver in bankruptcy of the Boston Fisheries Company, owner, for an order that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the marshal turn over to him the proceeds of a sale of the steamer made under order of the court. Petition denied.

See, also, 200 Fed. 876, 879.

Stinson, Stockton, Livermore & Forbes, of Boston, Mass., for libelant.

Blodgett, Jones & Burnham and Alger, Dean & Sullivan, all of Boston, Mass., for petitioners.

Fitz Henry Smith, Jr., receiver, of Boston, Mass., pro se.

DODGE, District Judge. In this libel a lien is claimed for repairs and supplies in the amount of $305.21. It was filed September 8, 1911. The steamer was arrested upon process issued under it on October 6, 1911.

There is no dispute that the steamer belonged to the Boston Fisheries Company, adjudicated bankrupt in this court also on October 6, 1911. The present petitioner was appointed receiver of its estate in bankruptcy October 7, 1911. In that capacity he filed a claim to the steamer, or the proceeds of her sale, October 11, 1911. No other claim has been filed.

On October 10, 1911, the libelant moved for an order of sale on the ground of the expense involved in holding the steamer under arrest. The receiver, though he had not then filed any claim, appeared, when this motion was presented to the court, and asserted his right to the vessel, or her proceeds, as part of the bankrupt estate. The court ordered the sale to proceed, without determining the question whether the adjudication in bankruptcy had or not subjected the vessel to the jurisdiction of the court in bankruptcy; it being in the interest of all parties that the sale should take place as early as possible. No one objected to this, and the vessel was sold by the marshal on October 21st. In this petition, filed November 3d, the receiver asks that the marshal be directed to pay over the proceeds to him as part of the estate to be administered in bankruptcy.

The libel asserts a maritime lien upon the vessel or her proceeds, and there have been three intervening petitions filed in the case, two on September 13th and one on November 3d, asserting other maritime liens against her. It is understood that still other intervening petitions may be presented for the same purpose. The receiver's petition asks the court to make such order as to proof of claims by persons claiming maritime liens upon the vessel or the proceeds of her sale as law and justice may require. If the proceeds go into the receiver's hands, such orders would have to be made by the court sitting in bankruptcy.

The filing of this libel on September 8th, as above, was before the filing, on September 14th, of the involuntary petition under which the adjudication of October 6th was made. But there was no arrest of the vessel until after the adjudication. It is understood that this was because she was under attachment in a state court suit when the libel was filed. The sheriff could sell only the right of the shipowner, subject to maritime liens. He could not give title good against all

the world, and he usually, as was said in The Caroline, 1 Lowell, 173, Fed. Cas. No. 2,419, waives his possession when the libels founded on such liens are filed, because his title becomes of little or no market value. In this case, however, he did not waive possession, and the marshal could not oust him. He relinquished possession when the adjudication in bankruptcy was ordered, whereupon the marshal took possession under his warrant in this case.

In the case of another vessel owned by this bankrupt I have held that, if the admiralty jurisdiction had become complete by actual previous arrest of the vessel, it was not disturbed by the bankruptcy adjudication. See the opinion this day filed in No. 540, The Philomena, 200 Fed. 859. I am not prepared to hold, though it was so held in one case under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), The Ironsides, 4 Biss. 538, Fed. Cas. No. 7,069, that the admiralty court may get jurisdiction after adjudication and proceed notwithstanding the bankruptcy. The general rule under similar circumstances is that jurisdiction belongs to the court which first gets actual custody of the property, in this case the admiralty court; and I am much inclined to believe this to be the rule which should govern here, particularly in view of the fact that the admiralty suit had been begun in advance of any bankruptcy proceedings, and with no purpose, so far as appears, of anticipating or obstructing them. But there is strong authority for holding that under the present act the bankruptcy court's jurisdiction is complete and exclusive, without actual custody, as soon as there is adjudication. See White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183; In re Alton Mfg. Co. (D. C.) 158 Fed. 367. The question here raised deserves more careful discussion and consideration than has yet been here given it. It need not now be finally determined. The admiralty court having actual possession, I think the bankruptcy court may in any event permit it to proceed with the determination of all questions of maritime lien relating to the property, as was done in Re Hughes (D. C.) 170 Fed. 809. Any question as to the competency of the bankruptcy court to pass upon maritime claims will thus be avoided. Whether the property must bear its share of the expenses of the bankruptcy administration, as in Re Hughes above cited, may be considered later.

The receiver's petition is therefore denied, and the marshal will pay the proceeds of sale in the regular way into the registry of the court.