THE BETHULIA.

(District Court, D. Massachusetts. November 4, 1912.)

No. 539.

BANKRUPTCY (§ 474*)—PROPERTY SOLD IN ADMIRALTY PROCEEDINGS—LIABILITY FOR COSTS AND EXPENSES.

Where a part of the property of a bankrupt consisted of vessels, subject to maritime liens, exceeding in amount the proceeds of the vessels when sold, to enforce which a suit was commenced before the bankruptcy proceeding, such proceeds should not be charged with any part of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

costs and expenses of the bankruptcy proceeding, incurred solely for the benefit of unsecured creditors, and having no reference to the maritime property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. § 474.*]

In Admiralty. Suit by the Lockwood Manufacturing Company against the steamer Bethulia. On petition of the trustee in bankruptcy of the Boston Fisheries Company, owner, for payment of part of the costs of bankruptcy administration out of proceeds in the registry. Granted in part.

See, also, 200 Fed. 862, 876.

Alger, Dean & Sullivan, of Boston, Mass., for petitioner.

Fitz Henry Smith, Jr., trustee, of Boston, Mass., pro se.

DODGE, Circuit Judge. The proceeds of sale of this vessel, amounting to $2,926.56, have been paid into the registry as directed ·in an opinion herein, dated November 21, 1911. The libelant and all others who have intervened to assert maritime liens upon the vessel or proceeds have been fully heard. In an opinion herein dated July 5, 1912, are set forth the various maritime liens held established and the order in which the court has held them entitled to payment. The costs taxable, according to the practice of this court in admiralty, in their favor are first to be paid out of the proceeds. These amount to $251.75, and the amount of proceeds remaining after they are satisfied will be $2,674.81. The lien claims held established amount in all to $3,162.18, entitled to payment in the following order; (1) A claim for wages amounting to $299.51; (2) 20 other claims, amounting in all to $1,982.04; (3) 2 claims, amounting to $880.63. It is evident that the claims included under (2) above cannot be paid in full, and that those included under (3) above cannot be paid at all.

As stated in the opinion dated November 21, 1911, the Boston Fisheries · Company, which owned this vessel, became a bankrupt in this court October 6, 1911, the date on which the marshal, after the adjudication, arrested her on this libel filed September 8, 1911. In denying a petition by the bankruptcy receiver for payment of the proceeds of her sale to him, the court said in the same opinion:

"Whether the property must bear its share of the expenses of the bankruptcy administration, as in Re Hughes (D. C.) 170 Fed. 809, may be considered later." 200 Fed. 862.

The receiver has since become trustee of the estate in bankruptcy, and has filed a petition on July 10, 1912, for payment of a proportionate share of the expenses ·of administration in bankruptcy out of the proceeds referred to above in payment of the lien claimants. The effect of such an order, if made, will be to further reduce the dividend upon the lien claims included in class (2) above.

· On the trustee's petition ·it was ordered (July 13, 1912) that the referee before whom the bankruptcy administration is pending ascertain and report. what proportion of the total costs of that administration

should be borne by these proceeds as a part of the bankrupt's estate. From his report filed October 1, 1912, it appears that the bankruptcy fees and expenses amount in all to $2,950.34; that the total assets of the estate, including the net proceeds of this sale, amount to $7,288.84; that the net proceeds referred to form $20/72$ of the whole estate, and should bear that proportion of the total bankruptcy charges, or $1,-165.89.

There has been no appearance to object to this report, except by one of the lien claimants belonging to class (2) above—the Staples Coal Company. On its behalf it is conceded that $741.66 of the total bankruptcy charges reported by the referee should be borne by these proceeds, but not the above proportion of the total charges found due by the referee. It is contended that no part of the remaining $2,208.68 should be borne by these proceeds, because it does not represent any money spent or any services rendered for the lien claimants' benefit. It is conceded that the bankruptcy expenses and charges are claims having priority under section 64b of the act (Act July 1, 1898, c. 541, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447); but it is insisted that the liens are to remain unaffected by the bankruptcy, under section 67d, and that this result is obtainable only by exonerating lienholders from the general costs of administration—i. e., those not incurred with any direct reference to the particular property upon which the liens attach. It will be seen that the amount which the Staples Coal Company concedes to be chargeable against the proceeds is less by $424.23 than that reported by the referee. The difference is the result of excluding certain items or parts of items included in the referee's total, which may be regarded as incurred for the benefit of unsecured creditors only, and as chargeable against these proceeds only on the theory that this steamer formed part of the estate under administration, without regard to valid liens upon her.

The hearing had to determine the validity of lien claims asserted has resulted in showing that no interest of any value in the steamer, over and above the valid incumbrances, passed to the trustee. If he could have foreseen this result with reasonable certainty when the owner's bankruptcy was declared, the trustee would not have been justified in setting up any claim to the steamer as part of the estate, or intervening to oppose the lien claims. Under the circumstances then existing, however, he could not have been expected to tell whether any, or which, liens were valid, and he was therefore justified in his intervention to contest the claims, and in assuming possession, care, and custody of the steamer pending their determination. The holders of the lien claims held valid are thus properly required to bear their share of the charges and expenses incurred or due for the purposes of this provisional custody; but as to charges not so incurred or due, though incurred in the administration of the estate as a whole, justice seems to me to require that they should be borne by the unsecured creditors (except where other vessels of the bankrupt in the like situation are involved), because they concern property to be administered for the unsecured creditors' benefit, as these do not.

In Re Hughes (D. C.) 170 Fed. 809, referred to in my former opin-

200 F.—56

ion above quoted, the fees of a master who ascertained and reported what was due the receiver, who had been in control of the maritime assets belonging to the estate, for expenses and services, was the only item of costs, beyond the expenses of preserving and caring for the maritime property itself, which was allowed out of the proceeds. The decision affords no authority for allowing out of proceeds as against the holders of valid liens thereon, either in whole or in part, such items as allowances to counsel for petitioning creditors, for the bankrupt, or for the receiver or trustee, if the services had no special reference to the maritime property.

Seven hundred forty-one dollars and sixty-six cents may be allowed the trustee upon his petition. The remainder of the proceeds, after paying the costs taxable in Admiralty, is to be distributed among the successful lien claimants as indicated above.