## In re COMMUNITY FUEL CORPORATION.

(District Court, E. D. New York. July 9, 1923.)

Bankruptcy ⬯101—Order requiring receivers to turn over property to trustee deferred until receivers could make more definite accounting.

At the time of appointment of trustee in bankruptcy for a corporation, its estate was in process of administration by receivers appointed in an equity suit, and the business was unusually complicated. Many claims were asserted against property in the hands of the receivers, and the proceeds of that sold, which had been referred to a master, but had not been adjudicated, leaving it uncertain how much of such property and proceeds was the property of the estate. *Held* that, while the jurisdiction of the court of bankruptcy, at least to distribute the estate, was exclusive, the receivers would not be ordered to turn over the property and records to the trustee until matters were so settled that they could make a more definite accounting and report.

In Bankruptcy. In the matter of the Community Fuel Corporation, bankrupt. On motion by trustee for order requiring receivers in equity of bankrupt to turn over property and records. Denied, with leave to renew.

See, also, 291 Fed. 686.

Edwin J. Dryer, of New York City, for trustee.

Augustus H. Skillin, of New York City, for receivers.

Robert B. Honeyman, of New York City, for Campbell, Heath & Co.

Edward M. Grout and Paul Grout, of New York City, for Frank H. Morse and others.

GARVIN, District Judge. This is a motion by the trustee in bankruptcy of the Community Fuel Corporation, bankrupt, for an order directing Augustus H. Skillin and Henry Hull, as receivers in equity of that corporation in an action entitled Atwater v. Community Fuel Corporation, 291 Fed. 686, to turn over and deliver forthwith to the trustee in bankruptcy all the money, property, funds, books, and records of the bankrupt now in their possession or under their control. The receivers in the equity action oppose the granting of the motion at this time, but deny that they refuse to recognize the rights of the trustee in bankruptcy. They further deny having any intention to distribute the property in their hands. They allege that the equity receivership has been unusually complicated; that when they took over the business of the bankrupt it was found to be in a most involved condition; that it had a large office in the borough of Manhattan and many employees; that it had coal yards in the boroughs of the Bronx and Brooklyn, where various persons were employed; that in its yards were machinery and other chattels, together with certain coal, which was unloaded from barges, and that in and around the harbor of New York were a number of other barges laden with coal belonging to bankrupt; that at that time there was a shortage of coal in the city of New York, and that the receivers attempted to fill orders on hand and sell at retail from the coal that came into their possession; that liens against

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
291 F.—44

the coal in the barges for advances made were asserted by the Irving Bank, and for demurrage and towing charges by the Knickerbocker Towing & Transportation Company.

The receivers in equity were appointed on February 6, 1923. On February 21, 1923, an order was made in the equity suit, authorizing the receivers to sell the coal on the barges and to deposit the net proceeds thereof in a special fund in the Irving Bank, subject to the order of the court, on notice to all parties, and providing that the proceeds of the coal be substituted in lieu thereof and subject to liens against it; that when the receivers finally obtained possession of said barge coal, and attempted to sell the same at retail, they ascertained that most of the orders on hand had been canceled and that they could sell at retail only a small portion of the coal; that therefore they entered into a contract with Frank H. Morse and associates to sell all the remaining barge coal by barge lots, after which the receivers effected sales of all the coal in the yards and on the barges; that the receivers have continued to operate the business, employing only such persons as were absolutely necessary; that they have sold the equipment of the yards and office, and have surrendered possession of the Manhattan office of the bankrupt; that all the tangible property belonging to the bankrupt has been sold by the receivers, and that they are engaged in further administering the estate in their charge; that they have paid most of the expenses of the receivership; that certain claims have been made against the receivers, which they dispute and have not paid; that they are endeavoring to collect certain claims accruing to the bankrupt, and to the receivers, which are now in the process of adjustment; that there are various matters in connection with the involved condition of the affairs of the bankrupt which have not yet been adjusted, and the receivers are not yet ready to account; that upon taking possession of the assets of the bankrupt the receivers were informed that Campbell, Heath & Co. claimed that all the coal in the yards had been assigned to them as security for the indorsement by that firm of the bankrupt's note given to the Irving National Bank, pursuant to an agreement made by the bankrupt with said firm; that thereafter the receivers made an arrangement with said firm, whereby the receivers were permitted to sell the coal in the yards, while Campbell, Heath & Co. would subordinate their claim to the proceeds to the expenses of the receivership; that thereafter the receivers sold the coal in the yards, and have used certain of the proceeds thereof in payment of the expenses of the receivership, pursuant to said agreement; that the receivers have to their credit as receivers in the Central Union Trust Company the sum of $6,209.03, which represents the balance remaining from the sale of the coal yard and the office and yard equipment, after deducting certain necessary expenses, and which may be subject to the alleged lien or claim of Campbell, Heath & Co.; that the receivers have sold all the coal in the barges, under the order of February 21, 1923, and, after deducting the necessary expenses connected with the sale, have deposited the balance, $21,694.67, in a special fund in the Irving Bank-Columbia Trust Company, as directed by said order; that a master has been appointed in the equity suit to pass upon all the claims or liens that

may be asserted against said fund; that the receivers have charged against the proceeds of sale of said coal such expenses as they believed properly chargeable against the same, but that on the hearing before the master he may find that certain of said expenses are not properly so chargeable, but should be charged against the general fund in the hands of the receivers; that, if this should occur, the receivers will be obliged to transfer such charges from the general fund to the special fund; that if the master recommends that such transfer be made, and if the general fund should be transferred at this time by the receivers to the trustee in bankruptcy, the receivers will lose control of the general fund, and will be unable to carry out any recommendations that may be made by the master or directed by the court; that it is probable that many and varied claims will be asserted against the special fund on the hearing before the master; that the receivers have in their possession books and records of the bankrupt and books and records of the business as carried on by the receivers, which it will be necessary to produce and offer in evidence on the hearing before the master; that if an order is made directing the receivers to turn over to the trustee in bankruptcy forthwith the books and records of the bankrupt the receivers will lose the control of these books and papers, and will not be in a position to have properly and adequately determined the many claims against the said fund; that as the receivers are now administering the estate in their charge, certain minor expenses must necessarily be incurred in connection therewith, to wit, the salary of a bookkeeper, besides other necessary disbursements in the conduct of the receivership; that the receivers have a claim of a demurrage against Frank H. Morse and associates, and that the Cranford Company has asserted various claims against the receivers in connection with the use and occupation of the Brooklyn yard by the receivers, and for sums alleged to be due because of delays in unloading barges; that by order of this court, dated June 4, 1923, in the equity action, the receivers were authorized to pay Elizabeth M. Allen the sum of $500 for use and occupation of the Bronx yard during March, 1923, for which payment has not been made; that since the date of their appointment the receivers were necessarily obliged to devote a large amount of their time to the administration of the estate in their hands; that this court, on May 8, 1923, granted to each of the receivers an allowance of $1,000 for services; that no other compensation has been received by them, and additional allowances aggregating at least $3,000 would be fair and reasonable; by order of this court the receivers have employed counsel, who has performed various services and has received no compensation therefor; that on notice to all the creditors of the bankrupt a hearing was held before this court on March 28, 1923, upon a motion to make permanent the receivership; that no creditors opposed this application, and on April 26, 1923, an order was made in the equity suit appointing Augustus H. Skillin and Henry Hull permanent receivers therein; that the receivers are now engaged in the administration of the estate in their hands, and cannot file their account, but expect to be able so to do in a short time; that as soon as they can prepare their accounting they will account either to the trustee or to the creditors of the bankrupt, as may be proper; that

to require at this time the delivery to the trustee of the books and records of the bankrupt, and the turning over to the trustee of the assets in the hands of the receivers, will not only seriously embarrass the receivers in the performance of their duties, but will bring about serious complications, which will cause loss to the estate; that the receivers assert that it would not be proper or practical that they be directed at this time to turn over to the trustee the assets, books, and records of the bankrupt now in the possession of the receivers, but that the more orderly procedure would be for the receivers to file an account in due course, and when the same is passed and allowed that an order be entered directing them to turn over to the trustee the balance in their hands.

It is perfectly apparent from the situation disclosed, that an already confused and complicated state of affairs will be very much aggravated, if the court grants the motion at this time. There can be no question but that, as is asserted by the trustee, the jurisdiction of the bankruptcy court, at least so far as the distribution of the estate is concerned, is exclusive. Cruchet v. Red Rover Mining Co. (C. C.) 155 Fed. 486; Gibbons v. Dexter Horton Trust & Savings Bank (D. C.) 225 Fed. 424; Hull v. Burr, 206 Fed. 1, 124 C. C. A. 135; In re Watts and Sacks, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; In re Knight (D. C.) 125 Fed. 35. Among the objects of the rule stated is the avoidance of needless confusion, as suggested by Cruchet v. Red Rover Mining Co., supra, and if no facts were presented by this motion except a receiver in equity holding funds, the title to which is clearly in the bankrupt, I should have no hesitation in granting the order forthwith; but with the complicated condition revealed, with the uncertainty of how much of the funds are finally to be held to be the property of the bankrupt, and with responsible officers of this court in possession thereof, I am of the opinion that a more orderly procedure is to hold the matter in abeyance, at least so far as the receivers in equity are concerned, until their rights in the property which is alleged to belong to the bankrupt can be determined.

Authorities are not lacking holding that the court is not obligated to recognize the jurisdiction of the bankruptcy court in cases where the court, sitting in either equity or admiralty, is administering the assets of the estate. In re Edward Ellsworth Co. (D. C.) 173 Fed. 699; In re Hudson River Electric Power Co. (D. C.) 173 Fed. 934; The Bethulia (D. C.) 200 Fed. 862. But the court is asked merely to defer action in ordering the transfer to the trustee until rights can be determined. The receivers in equity do not suggest that the court refuse ultimately to order paid over to the trustee all funds concededly belonging to the bankrupt estate.

The experience and ability of the special master, Hon. Abel E. Blackmar, a former Presiding Justice of the Appellate Division of the Supreme Court of the state of New York, Second Department, is a guaranty that a careful hearing will be assured and that the rights of all parties will receive proper protection. It should be noted that a claim

has been asserted on this motion by Campbell, Heath & Co., who allege that the trustee in bankruptcy has no interest whatever in any of the moneys now held by the receivers in equity. It may well be that such claim requires this to be determined by the trustee by a plenary action. This question, however, need not be determined at this time. The bankrupt was adjudicated a bankrupt on February 23, 1923, but no trustee was elected until May 21, 1923. Meanwhile nothing appears to indicate that during that period any creditor attempted to hasten the election of a trustee, in order to secure the transfer of the assets to the trustee by the receivers in equity.

The motion is denied, with leave to renew when the receivers in equity have filed an accounting of the moneys now in their hands. They will be required to use due diligence in presenting the evidence to the special master and in filing an accounting, when those issues are determined.